## ALLEN v. PALMER et al.

No. 33369.   Oct. 26, 1948.

Supplemental Opinion Sept. 13, 1949.

*209 P. 2d 502.*

D. F. Rainey and John Barksdale, both of Okmulgee, for plaintiff in error.

Keaton, Wells, Johnston & Lytle, of Oklahoma City, and J. C. Wright, of Okemah, for defendants in error.

LUTTRELL, J. At some time prior to December 4, 1946, plaintiffs Edna V. Palmer, Lester T. Palmer, T. E. Standley, Josef Faust and F. G. Kerns commenced an action in the district court of Okfuskee county, seeking, among other things, to cancel an oil and gas mining lease owned by defendants George C. Vincent and J. R. Allen. On December 4, 1946, the trial court rendered, judgment in that case decreeing that the Vincent and Allen lease was a valid and subsisting lease, finding that during the litigation the primary term of the lease had expired, and gave Vincent and Allen a 30-day extension of said lease, with a proviso that within 30 days from the date the judgment became final they should commence the actual drilling of a well for oil and gas upon the land covered by the lease, and continue such drilling operations with due diligence until the well was completed as a producer, in which event the lease should continue in full force and effect as long as there was production from the leasehold estate.

Plaintiffs gave notice of appeal from this judgment, filed an appeal bond, and ordered a case-made prepared by the court reporter. Thereafter, on March 27, 1947, plaintiffs, by a written dismissal filed in said cause, withdrew their notice of appeal, dismissed said appeal and agreed that the judgment should become final. Defendants' attorney was notified that the appeal had been dismissed, and he thereupon advised the defendant Allen to that effect. The one-half interest of Vincent in said lease had, prior to the dismissal of the appeal, been transferred to one McAdams and by McAdams released. Allen, upon learning of the dismissal of the appeal, moved a drilling rig upon the property and attempted to comply with the judgment of the trial court by commencing actual drilling operations within the said 30 days. On May 12, 1947, plaintiffs filed in said cause an application for an order directing compliance with the judgment, which application stated that the interest of Vincent had been released, and that Allen had failed to meet the requirements set out in the judgment necessary to validate the leasehold as to a one-half interest therein, so that his rights as lessee had terminated, but that he continued to claim an interest in said property, and prayed that the court enter an order compelling Allen to comply with the provisions of said judgment.

A hearing was had upon this application on May 22, 1947, and after hearing the evidence of witnesses and argument of counsel, the trial court found that Allen had failed and neglected to comply with the terms and provisions of said judgment, that all of his interest in the real property covered by his lease had terminated on April 26, 1947, and decreed cancellation of the oil and gas mining lease theretofore owned by Vincent and Allen. From this judgment, Allen appeals.

The decisive question presented is whether Allen commenced the actual drilling of an oil and gas well upon the property covered by the lease on or before April 26, 1947, upon which day the 30-day period allowed by the court ended, and if said well was commenced, whether he continued drilling operations with due diligence. Allen contends that the evidence at the hearing before the trial court conclusively establishes that he did comply with the requirements of the judgment of December 4, 1946, while plaintiffs contend that the evidence shows that he did not. This necessitates a review of the evidence heard by the trial court.

It is admitted by the parties that the plaintiffs Faust and Kerns had, prior to the judgment of December 4, 1946, taken a second or top lease from the

other defendants, who were the owners of the land, and from the evidence it appears that this lease had been, or was at some date not set out in the evidence, assigned to Rayn Consolidated Petroleum Company. It further appears that McAdams, a drilling contractor, who testified that the Ryan Consolidated Petroleum Company was his best employer, had purchased from Vincent his undivided one-half interest in the lease, paying therefor the sum of $600, and that upon learning that Faust and Kerns had transferred or were transferring their lease to Ryan Consolidated Petroleum Company, he released the one-half interest so acquired by him. He testified that he did this without consideration upon learning that the Faust and Kerns lease had been assigned to Ryan. It further appears that one Keegan, an agent of plaintiffs, had engaged two parties living in the vicinity of the land covered by the Allen lease to send him daily reports on the amount of time spent on the well by Allen and his men, and the condition of the weather during that period. These reports were sent to him beginning May 2nd and continued up to May 17th.

As to his efforts to comply with the requirements of the judgment, Allen testified that he kept upon an adjoining tract, upon which he had drilled some wells, a complete string of tools and equipment so that he could immediately move in and begin drilling a well upon the leased premises until, through his attorney, he learned that plaintiffs had filed an appeal bond and ordered a case-made so that it was apparent that they intended to go through with their appeal; that being advised by his attorney that such an appeal would tie the situation up for some time, he contracted for the drilling of another well near Henryetta and removed some of the small tools, the band wheel and other equipment, and engaged in the drilling of the well near Henryetta and was so engaged when notified by his attorney that plaintiffs had dismissed their appeal; that thereupon he attempted to contact Vincent, and discovered that Vincent had sold his interest in the lease to McAdams, and that McAdams had released such interest, thus leaving the Faust and Kerns lease good as to a one-half interest. He further testified that shortly after the appeal was dismissed he requested a gas connection from the O. P. & M. Gas Company at Okmulgee, which had a gas line in the vicinity, but was unable to get such a connection until April 29th, for the reason that the gas line was being repaired; that on April 18th he moved his drilling equipment on a location on the leased property, brought in other machinery necessary to commence the drilling of a well, and that on the 25th he put the rig up and started the spudding, spudding being the beginning of actual drilling. His testimony is corroborated by his own witnesses, and also by the testimony of two witnesses produced by plaintiffs, both of whom testified that Allen commenced drilling the well on the afternoon of the 25th, and drilled all afternoon of that day.

Allen testified that because of his inability to obtain gas he used gasoline in the operation of his drilling machine, carrying it by hand from a road near the property because the ground was so soft from rains that trucks could not operate; that the first structure they struck was solid rock; that on the 25th they made some seven feet of hole through solid rock; that the next day they worked was the 29th, during which day they drilled the hole down to seventeen or eighteen feet through the solid rock formation; that the next day they went back was May 5th and that then they drilled to a total depth of some forty feet, and also strung the gas line and hauled in the pipe for the water line; that on May 5th he received a letter from the attorneys for plaintiffs advising him that they had investigated his activities and that his lease terminated on April 26, 1947; that his actions since that date in going upon said land and attempting to continue

drilling constituted a trespass upon the land for which he would be held accountable in damages, and that upon receipt of this letter and consultation with his attorney he, upon his attorney's advice, made no further effort to go upon the land and continue drilling, but brought an action against the owners of the second lease in an attempt to clarify the situation and find just what his rights were.

He testified that practically at all times while he was upon the land it was so water soaked from heavy rains that he was unable to move trucks upon it, and that his inability to lay his gas line and water line was due to this water soaked condition of the premises. His testimony to this effect is substantiated by the testimony of other witnesses, including some who were produced by plaintiffs, who testified that at the time Allen attempted to move upon the property and commence drilling operations the condition of the land due to excessive rainfall was extremely bad for such operations. It appears that the condition of the land was such that Allen was unable to move his drilling rig upon the premises by truck, but was compelled to pull it most of the way by winches attached to trucks, the trucks being fastened to trees, in order to drag the drilling equipment through the mud. Allen also testified that he did not have surface casing, but that surface casing was unnecessary because, from his experience in the adjoining property, he knew that he would be drilling in rock for some distance.

Careful examination of all the evidence adduced by both parties convinces us that Allen did commence the actual drilling of the well within the time specified in the original judgment, and that within that period he had actually drilled in solid rock some seven feet. We are cited to no case by plaintiffs, and we know of none, holding that actual drilling of an oil and gas well is not in fact commenced until, as contended by plaintiffs, all the equipment, machinery and materials necessary to

drill and complete the well have been placed upon the leased property. In fact, from the testimony of witnesses produced by both parties, it appears that it is not customary, prior to commencing drilling operations, to have upon the land everything necessary to complete the well. The fact that Allen was unable to lay his gas lines and water lines was not due to any fault of his, but, so far as the record shows, was due to weather conditions which made it impossible for him to do so. The charge that he did not have surface casing was rendered unimportant by his testimony that surface casing was unnecessary, and that the first casing he used on a lease where the drilling at the surface was commenced in hard rock was eight-inch casing necessary to shut off the water flow further down. Unquestionably, from the evidence, although he may not have been completely equipped on April 26, 1947, he had on that date actually drilled into the earth some seven feet. This was actual drilling as required by the judgment of December 4, 1946.

If he had so commenced the actual drilling of the well, whether Allen exercised due diligence in further drilling depends upon the facts and circumstances of the case. In Strange v. Hicks, 78 Okla. 1, 188 P. 347, and in Pelham Petroleum Co. v. North, 78 Okla. 39, 188 P. 1069, we held that neither the lessor nor the lessee was the arbiter as to whether or not due diligence had been exercised in operating and developing an oil and gas mining lease, and that whether such due diligence had been exercised depended upon the facts and circumstances of each case. And in the latter case we held that due diligence was whatever under the circumstances would be reasonably expected of operators of ordinary prudence.

Measured by these standards it is reasonably apparent that Allen, after he commenced the actual drilling of the well, prosecuted the work with due diligence. We do not believe, and are unwilling to hold, that due diligence

required, as suggested by plaintiffs, that he move his gas lines and water lines upon the premises by hand, or that he endeavor to lay the lines when the condition of the soil was such as to render it practically impossible. We are convinced that up to May 5th, the date on which he received the letter advising him that in the judgment of plaintiffs his lease had terminated, and he would be liable for damages if he continued to operate, Allen had exercised due diligence in his efforts to continue the actual drilling of the well. All the evidence shows that he was acting in good faith, in an honest effort to comply with the judgment of the trial court, and to put down the well with all possible dispatch. In fact, plaintiffs apparently do not question his good faith and sincerity in proceeding as he did. While they point out that he delayed from the date of the dismissal of the appeal until April 18th before actually commencing operations, it appears from his testimony that he was engaged in the drilling of the well near Henryetta, and had to remain there for some little time in order to properly perform his drilling contract at that point. It further appears that during that period he was endeavoring to contact the owners of the other one-half interest in the lease and secure their co-operation in his drilling operations.

In this respect the evidence shows that plaintiffs were making no effort to co-operate with Allen. The unexpected dismissal of their appeal after he had removed a portion of his tools from the adjoining property; the hiring of persons in the vicinity to make reports as to what he was doing; the notification on May 5th that his rights had terminated and that he would be held for damages as a trespasser, and the filing of the application for an order directing compliance with the judgment on May 12th, all indicate that the plaintiffs were directing their efforts to getting rid of the Allen lease instead of co-operating with Allen.

While the letter of May 5th indicated that the subsequent lessees, Faust and Kerns, would undertake to hold him liable for damages as trespasser, Allen had every reason to believe that his lessors were actively co-operating with Faust and Kerns, and their assignee Ryan, in the effort to destroy or terminate his rights, and the giving of such notice under the circumstances was a sufficient attack upon his title as to justify him in desisting from further efforts to prosecute the drilling of the well. Chapman v. Bowers, 180 Okla. 49, 67 P. 2d 788; Hudspeth v. Schmelzer, 182 Okla. 416, 77 P. 2d 1123.

While there is some contention on the part of the defendant Allen that he was entitled to a jury trial, we consider the case one of equitable cognizance, since it was really a proceeding for the cancellation of the oil and gas lease. In such case the rule that the judgment of the trial court will be reversed when it is clearly against the weight of the evidence is well established. We hold that in the instant case the judgment of the trial court canceling defendant's lease for failure to comply with the former judgment is clearly against the weight of the evidence.

Reversed.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur.

#### Supplemental Opinion.

LUTTRELL, J. D. F. Rainey, attorney for the plaintiff in error, filed herein on July 12, 1949, suggestion of death and motion for revivor, stating that plaintiff in error died on the 3rd day of November, 1948.

Therefore, as is the custom of this court in such case, the opinion herein rendered will be as of the date the case was submitted, to wit, the 26th day of October, 1948, which was prior to the death of J. R. Allen.