## COSDEN et al. v. CARTER WOLF DRILLING CO., et al.

No. 4084.

United States Court of Appeals Tenth Circuit.

Aug. 4, 1950.

Louis A. Fischl, Ardmore, Okl. (Thos. W. Champion, Ardmore, Okl., Chas. N. Champion, Tulsa, Okl., Julian E. Simon and Earnest E. Sanders, Fort Worth, Tex., on the brief), for appellants.

Coleman Hayes, Oklahoma City, Okl. (George Stallwitz and Paul H. White, Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

The appellants brought this action against the appellees to quiet the title to a certain oil and gas lease, and to cancel or remove as clouds upon appellants' title, certain instruments transferring interests in such

lease and a mortgage upon one of such interests.

The lease under which appellants claim was dated September 23, 1941. It ran from Perrin Grant, as lessor, to Cosco Oil Company, as lessee. It covered 100 acres of land in Section 30, Township 1 North, Range 1 East, in Garvin County, Oklahoma. The lease provides that it shall "remain in force for a term of ten (10) years and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is or can be produced." It further provides that if operations for the drilling of a well for oil or gas are not commenced on such lands on or before one year from its date, the lease shall terminate as to both parties, unless, on or before one year from its date, the lessee shall pay or tender to the lessor, or for his credit in a designated depository, $100, which shall operate as rental and cover the privilege of commencing or deferring drilling operations for the term of one year, and that in like manner and upon like payments the commencement of the drilling operations may be further deferred for like periods successively. It further provides: "If at any time prior to the discovery of oil or gas on this land and during the term of this lease, the lessee shall drill a dry hole, or holes on this land, this lease shall not terminate, provided operations for the drilling of a well shall be commenced by the next ensuing rental paying date, or provided the lessee begins or resumes the payment of rentals in the manner and amount hereinabove provided; * * *."

Annual delay rentals were duly paid to the lessor under the lease. The last delay rental was paid on August 6, 1948, for the period of one year from September 23, 1948. By mesne assignments E. N. Cosden became the owner of such lease. On July 30, 1948, E. N. Cosden, as assignor, executed an instrument, which recites that in consideration of $1.00 she "does hereby sell, assign, transfer and set over unto Carter Wolf Drilling Company,[1] a co-partnership, composed of Preston Carter and Matt Wolf Jr." all her interest in and to the lease above referred to, except one described 10-acre tract embraced therein. The assignment recited the names of the parties to the lease, the date thereof, and the book and page in which it is recorded in the real estate records of Garvin County, Oklahoma. The assignment provided that the assignee bound and obligated itself "to begin a test well for oil or gas" within 60 days from the date of the assignment, on a 10-acre tract designated in the assignment, and to continuously and with due diligence drill such well to a depth of 2,500 feet, unless oil or gas in paying quantities should be found at a lesser depth, and that should the assignee fail to commence such well within the designated time and drill same continuously, then the assignment should terminate and the assignee should have no further interest in the lease.

The assignment further provided: "As an additional consideration for this assignment, there shall be paid to assignor the market value as run to the pipe line or saved, of 1/16th of 7/8th of the oil, gas or casinghead gas, exclusive of oil used for developing and operating said premises, that may be produced and saved from said premises under the terms of said lease, free and clear of any cost to assignor herein for drilling, developing and operating said lease. In this connection, should assignee herein in drilling first well complete same to a commercial producer, then said assignee herein is obligated to begin the drilling of a second well within sixty (60) days after completion of the prior well, and failure to do so shall terminate that portion of the lease undrilled, with assignee herein retaining each completed well with 10-acres in a square around same, or as near a square as possible, and if the said well is located in the center of each 10-acre tract, then assignee to retain said well and said 10-acres that said well centers in. There is no intent herein to create any further drilling obligation on said assignee herein other than the first well, and thereafter assignee may elect to either drill, or forfeit the remaining acreage, as herein provided."

The assignment was prepared by counsel for E. N. Cosden. It was forwarded by

1. Hereinafter called assignee.

such counsel to Roy E. Burks, with instructions to deliver it to the assignee when it spudded in the first well. Burks delivered it on September 28, 1948.

Subsequent to the commencement of the action, E. N. Cosden transferred to J. S. Cosden, Jr., 25 per cent, and to Ottilie C. McPherson, 19 per cent, of her interest in the lease, and they were made parties plaintiff in the action.

On September 29, 1948, for a consideration of $5,000 the assignee under the assignment of July 30, 1948, assigned one-half of its interest thereunder to C. L. Carlock. By subsequent assignments the other appellees acquired undivided interests in the interest transferred by the assignment of July 30, 1948. At the time of the judgment below, the undivided interests of appellees were as follows: C. L. Carlock—3/8; Preston Carter—15/32; Vickers Petroleum Co., Inc.—1/8; Jack Wolf—1/64 and Matt Wolf, Jr.—1/64.

On September 14, 1948, King Knowles, having been employed so to do by assignee, dug a cellar at the location specified in the assignment of July 30, 1948. On September 27, 1948, Joe Brown, pursuant to a contract with assignee, moved his spudder rig to the location specified in the assignment of July 30, 1948, and about the middle of the morning of September 27, 1948, commenced making a 13-3/4 inch hole with the spudder. Caving conditions were encountered near the surface, causing considerable trouble. Brown drilled continuously, except when he was interrupted by cave-ins, until he reached a depth of 33 feet below the bottom of the cellar on September 30, 1948. Late in the afternoon of that day, 26 feet of 10-3/4-inch surface pipe, which had been furnished by the assignee, was suspended in the hole. On October 1, 1948, the surface pipe was cemented. Before the cementing operation was completed, materials to be used in the rotary drilling operation were moved onto the location. The rotary rig was moved onto the location on October 2, 1948. Rigging up of the rotary equipment required two or three days and drilling with the rotary below the surface pipe was then commenced. The well was then

drilled to a depth of 2,510 feet and completed as a dry hole about October 17, 1948.

On March 3, 1949, a second well was commenced, located 495 feet north of the first well. The second well was completed March 12, 1949, to a depth of 1,418 feet. Commercial production was obtained at about 1,200 feet. In February, 1949, a well offsetting the leased premises embraced in the assignment of July 30, 1948, was completed as a commercial producer. That well was diagonally offset by the second well drilled on the leased premises. A third well was commenced on March 10, 1949, located on the same 10-acre tract on which the first well was drilled. It was located 330 feet east and 165 feet north of the first well location. It was completed on March 20, 1949, at a depth of 1,373 feet. Commercial production was obtained at about 1,200 feet. Wells No. 4, No. 5, No. 6, No. 7, No. 8 and No. 9 were commenced on April 23, May 2, July 1, September 7, November 11, and November 18, 1949, respectively.

On March 24, 1949, appellants, through their counsel, wrote a letter to appellees, advising them that they had no rights under the lease and demanding surrender of the leased premises to appellees. On April 1, 1949, appellants commenced this action.

The judgment of the trial court decreed that the appellees were the owners of the leasehold estate in the proportions above set out, as to the lands embraced in the assignment, subject to appellants' overriding royalty.

Under the terms of the assignment of July 30, 1948, the assignee thereunder was obligated to begin the drilling of a test well at the location designated in such assignment, on or before midnight, September 28, 1948, and to continue the drilling thereof with due diligence to a depth of 2,500 feet, unless oil or gas in paying quantities should be found at a lesser depth.

Before the drilling with the rotary rig could be commenced, it was necessary to dig the cellar, complete the drilling with the spudder and set and cement the surface pipe. The cellar was dug on September

14, 1948. The drilling with the spudder was commenced on September 27, and was completed on September 30, 1948. The surface pipe was moved onto the lease before the completion of the spudder drilling. It was set on September 30, and cemented on October 1, 1948. The digging of the cellar and the drilling with the spudder on September 27 and 28, 1948, constituted the beginning of the drilling of the first well.[2]

Materials required in the rotary drilling were moved onto the location on October 1, 1948. On October 2, 1948, the rotary rig and a portable derrick were moved onto the location and were promptly rigged up. Actual rotary drilling was commenced immediately upon the completion of setting up the rotary rig, on October 5, 1948, and was continued until the well was completed as a dry hole.

■ Due diligence is what, under the circumstances, reasonably would be expected of a prudent operator.[3] Tested by that standard, we entertain no doubt that the assignee, under the assignment of July 30, 1948, continued with due diligence the drilling of the well from its commencement on September 27, 1948, until its completion as a dry hole.

■ The assignee having begun the test well, and having completed the same in accordance with the requirements of the assignment of July 30, 1948, upon such completion, if not before, the entire leasehold estate vested in the assignee.[4] However, the assignee's rights were subject to divestiture as to undrilled 10-acre tracts, by failure of the assignee to comply with the conditions subsequent of such assignment, with respect to the drilling of additional wells. We think the meaning of the provisions of such assignment with respect to the drilling of additional wells after the completion of the first well is perfectly clear. Under the terms of such assignment, when, in the course of the development of the land embraced within the assignment, the assignee drilled and completed a well as a commercial producer, whether that was the first or a subsequent well, it was obligated within 60 days after the completion of such well as a commercial producer, to begin the drilling of another well. That obligation arose as to each well completed as a commercial producer. Since the first well was not completed as a commercial producer, the assignee was not required to commence the drilling of a second well within 60 days after such completion. Its obligation, under the lease of September 23, 1941, was either to drill or pay delay rental in accordance with the terms of the lease set forth, supra, and to protect the land embraced in the assignment from drainage from wells on the adjoining lands.[5] At most, its duty under the assignment, after the drilling of the first well as a dry hole, in order to protect its rights with respect to the undrilled 10-acre tracts was to continue development within a reasonable time and with reasonable diligence;[6] and wherever a well was completed as a commercial producer, to commence another well within 60 days thereafter. The commencement of the second well on March 3, 1949, was within a reasonable time, and development thereafter was with due diligence. Indeed, the appellants do not assert the contrary. However, when the assignee completed the second well as a commercial producer, it became obligated to commence the

2. Cromwell v. Lewis, 98 Okl. 53, 223 P. 671, 672; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647, 648; Aldridge v. Gypsy Oil Co., 132 Okl. 13, 268 P. 1109; Terry v. Texas Co., Tex.Civ.App., 228 S. W. 1019 (cited with approval in the Cromwell case).

3. Allen v. Palmer, 201 Okl. 673, 209 P.2d 502, 505; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069, 1072.

4. Sweeney v. Bay State Oil & Gas Co., 192 Okl. 28, 133 P.2d 538, 540–541.

5. Eastern Oil Co. v. Beatty, 71 Okl. 275, 177 P. 104, 105, 106; Vol. 2, Summers, Oil and Gas, Permanent Edition, § 397, pages 319, 320, 321.

6. Eastern Oil Co. v. Beatty, 71 Okl. 275, 177 P. 105, 106; Hitt v. Henderson, 112 Okl. 194, 240 P. 745, 747; New State Oil & Gas Co. v. Dunn, 75 Okl. 141, 182 P. 514, 515; Doss Oil Royalty Co. v. Texas Co., Okl.Sup., 137 P.2d 934, 937, 938; Vol. 2, Summers, Oil and Gas, Permanent Edition, § 396, pages 309, 310.

drilling of a third well within 60 days after the completion of the second well. Since the assignee and its successors have complied with the provisions of such assignment, with respect to the commencement of the test well and the completion thereof, and the drilling of an additional well whenever a well was completed as a commercial producer, and with the express and implied conditions of the lease and assignment, it follows that the assignee and its successors have not forfeited any of the acreage embraced within the assignment.

Affirmed.