MOORE OIL, Inc., Plaintiff,

v.

W. F. SNAKARD, Defendant.

Civ. No. 7131.

United States District Court
W. D. Oklahoma, Civil Division.

Feb. 5, 1957.

252

Brown & Verity, Oklahoma City, Okl., for plaintiff.

P. D. Erwin, Chandler, Okl., Dudley, Duvall & Dudley, Oklahoma City, Okl., for defendant.

RIZLEY, District Judge.

This is an action by the owner of four oil and gas leases covering eighty-five undivided mineral acres in the NW ¼, Sect. 2, Township 14 North, Range 2, East, I.M., in Lincoln County, Oklahoma, to quiet title against the defendant, who is the record owner of prior oil and gas leases covering the entire mineral interest in the same quarter section of land. Plaintiff seeks to obtain cancellation of defendant's leases as a cloud upon its title and enjoin defendant from asserting any right, title or interest in and to the second Wilcox sand horizon underlying the disputed leasehold. Jurisdiction is founded upon diversity of citizenship and requisite amount in controversy.

Plaintiff contends that defendant's leases have all expired by virtue of his failure to commence operations for the drilling of a well on or before July 1, 1955, as expressly required by his leases; or, in the alternative, if defendant timely commenced his operations, they were not carried out to commercial production with the diligence required to extend the leases beyond July 1, 1955. The plaintiff also asserts that, by assignment of a pooling order of the Corporation Commission of Oklahoma from one Hoyt B. Moore, it holds the exclusive right and duty to develop the second Wilcox sand horizon underlying the disputed leasehold.

Defendant denies that jurisdiction exists over the subject matter of this action, asserting that plaintiff's failure to allege its possession of the disputed leasehold renders the complaint fatally defective. It is also contended that the requisite jurisdictional amount is not involved in this dispute. To the merits of the complaint, defendant answers that he is the owner of valid and subsisting oil and gas leases covering the entire mineral interest in the land in question and has been in possession, continuously engaged in drilling operations since July 1, 1955; that the plaintiff's lessors had executed prior leases of their undivided interests to the defendant, which are of record and paramount to plaintiff's leases. The defendant denies that the proceedings before the Corporation Commission, or its order, purporting to grant plaintiff's assignor the exclusive right to develop the second Wilcox sand horizon is binding on him, alleging that such proceedings and order are void for want of statutory or actual notice to him, and for want of jurisdiction in the Commission to determine the rights of lessees claiming leases upon the same tract of land, which jurisdiction is said to be vested in the District Courts of the State of Oklahoma.

Defendant's contention that this Court is without jurisdiction over the subject matter of the action is not well founded. The case of Lancaster v. Kathleen Oil Company, 241 U.S. 551, 36 S.Ct. 711, 60 L.Ed. 1161, involved an action by an oil and gas lessee brought to obtain the same type of relief sought by this plaintiff. The Supreme Court held that where the legal remedy is inadequate, or such legal remedy is unavailable, a court of equity would take jurisdiction to determine all the issues between the parties, including the right of possession. The authorities cited by defendant are clear in showing that the legal remedy of ejectment is not available to this plaintiff; it is not suggested that any other adequate remedy at law exists, and the Court finds that there is in fact none available.

The Oklahoma Supreme Court has sustained the right of a lessee, not in possession, to sue for the purpose of canceling an adverse claimant's lease executed by the same lessor under whom plaintiff claimed. In Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 339, 48 A.L.R. 876, the court canceled the lease of the adverse claimant, put the plaintiff in possession and enjoined the defendant from claiming any interest in the disputed leasehold. The Court pointed out that the rule announced in Kolachny v. Galbreath, 26 Okl. 772, 110 P. 902, 38 L.R.A.,N.S., 451, did not apply to an action seeking determination of conflicting rights of lessees claiming the same interests from the same lessor. And see Pine v. Webster, 118 Okl. 12, 246 P. 429; Franklin v. Margay Oil Corporation, 194 Okl. 519, 153 P.2d 486.

The case of Twist v. Prairie Oil & Gas Company, 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed. 1297, is not applicable to this case, except insofar as it recognizes that there are instances in which quiet title actions may be maintained by one not in possession, and that such actions are within the equity power—or jurisdiction of the Federal Courts.

Defendant's contention that the action does not involve the requisite jurisdictional amount of $3,000 arises from the fact that the proceedings before the Corporation Commission, in June, 1955, which plaintiff pleads and relies upon, fixed a value upon the disputed leasehold of $10 an acre. It is suggested that such value is binding upon this Court in determining whether the jurisdictional amount is involved in this action.

■■ This Court is charged with the duty of determining the facts upon which its jurisdiction, or want of it, is grounded. The findings of the Corporation Commission of Oklahoma, or of some other tribunal, cannot foreclose this Court's inquiry into the value of the subject matter of an action before it.

The proof is undisputed that the value of this leasehold, at the time the complaint was filed, was between $50 and $100 per acre. Limiting the amount in controversy to the eighty-five undivided acres claimed by plaintiff under its leases, the dispute involves well over the jurisdictional amount of $3,000. The Court finds, therefore, that jurisdiction exists over this action.

■■ Plaintiff seeks to draw into issue the validity of each of the oil and gas leases, held of record by defendant, covering undivided mineral interests in the subject land. However, as plaintiff's title to the disputed mineral leasehold rests upon only four leases covering an aggregate of eighty-five mineral acres in the disputed Thomas lease, this Court must limit its determination to whether those leases held by plaintiff are valid and in force. This is true for the reason that the plaintiff must recover, if at all, on the strength of his own title. Pauline Oil & Gas Co. v. Fischer, 191 Okl. 346, 130 P.2d 305; Moore v. Barker, 186 Okl. 312, 97 P.2d 776. The owners of undivided mineral interest in the Thomas leasehold who have not executed leases to plaintiff are not parties to this action; they are neither necessary nor indispensable to the dispute between this plaintiff and defendant, and neither the validity of leases executed by them to the defendant nor the rights existing between them and defendant are issues before this Court.

Skelly Oil Company·v. Wickham, 10 Cir., 1953, 202 F.2d 442.

The force and effect of plaintiff's leases must in final analysis depend upon whether defendant's prior recorded leases of the same interests have expired or terminated. Determination of this question requires a construction of defendant's leases to ascertain his rights and duties thereunder and ascertainment of the facts, which bear upon his performance or breach of such duties, from the evidence which is in dispute.

■ The parties are in disagreement as to the proper construction of the four leases in dispute. Two forms of leases are involved, one form stipulating no definite term, the other providing for a term of one year; each of the leases contain an unusual habendum clause and an express drilling obligation. The "unless" provision of the leases are stricken out. It is not contended that the instruments in dispute do not constitute leases or that they are ambiguous.

The defendant's leases from David Thomas and Rex R. Moore, are identical, both are dated October 16, 1954, and contain the following provisions:

"It is agreed that this lease shall remain in full force and effect for a term of —— years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, or the premises are being developed or operated.

* * * * * *

"If operations for the drilling of a well be not commenced on said land on or before July 1st, 1955, this lease shall terminate as to both parties,

* * * * * *

"If the lessee shall commence operations to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and· if oil or gas, or either of them, be found in paying quantities, this lease shall continue and

be in force with like· effect as if such well had been completed within the term of years herein first mentioned."

The defendant's leases from Bleeker Croom and Irene Croom, his wife, and from Hoyt B. Moore and Ethel Moore, his wife, are each identical, each is dated July 1, 1954, and both leases contain the following provisions:

"It is agreed that this lease shall remain in full force for a term of one year from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, or the premises are being developed or operated.

* * * * * *

"If the lessee shall commence operations to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with the like effect as if such well had been completed within the term of years herein first mentioned.

* * * * * *

"If no well be commenced on the above described property on or before July 1, 1955, this lease shall become null and void."

Plaintiff contends that the four leases terminated at midnight, July 1, 1955, in the absence of production in paying quantities, subject to revalidation should a well commenced on or before such date, be diligently drilled and completed as a commercial producer by the lessee. Plaintiff recognizes the lessee's right to drill any well commenced on or before July 1, 1955, to completion, but contends that such right does not work an· extension of the leases during such drilling and completion period, except by relation back should such well be diligently completed as a commercial producer after the primary term of the leases. Plaintiff cites many cases in-

volving construction of leases, and strongly relies upon the case of Skelly Oil Company v. Wickham, 10 Cir., 1953, 202 F.2d 442, in support of its position.

Defendant, on the other hand, contends that the leases, in question contemplate that he should have until July 1, 1955, in which to commence operations on a well, in the absence of which the leases would expire by their own terms. Defendant also asserts that, if the express drilling obligation was satisfied by timely operations, the leases may be extended in force and effect by the happening of either of two expressly stipulated conditions, to wit: (1) "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee," or (2) "or the premises are being developed or operated." This construction of the leases is said to be the only reasonable means of giving force and effect to the unusual provision of the habendum which in the disjunctive expressly provides for extension so long as there is commercial production, "or the premises are being developed or operated."

It is manifestly clear that the lease construed in the Skelly Oil Company v. Wickham case, supra, did not contain the disjunctive and alternative means of extending the lease which the leases before this Court contain. Nor did the other cases cited by plaintiff construe a habendum clause such as we are here concerned with. The case of Prowant v. Sealy, 77 Okl. 244, 187 P. 235, 238, involved a lease containing the following habendum clause:

> " 'To have and to hold the same for and during the term of three years from the date hereof, and as much longer thereafter as oil or gas is found therein, or said premises developed or operated.' "

While the facts in Prowant and the case at bar differ materially, the problem of construction of the leases is very much analogous.

The Supreme Court of Oklahoma determined that the words " 'premises developed or operated' ", contained in the habendum clause meant that the lease would be extended so long as the premises were being developed or operated. Thus, continuous operations or development, carried on in good faith and with reasonable diligence, at a well commenced during the primary term would serve to extend the lease, even though there had been no production during the primary term. The leases before this Court are of the same effect.

■■ This construction of the habendum clause does not conflict with the provision in the leases which permits lessee to complete any well commenced during the term of the lease or any extension thereof. The lessee would possess such a right under the Oklahoma decisions by implication, even in the absence of the express stipulation, Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249; Simons v. McDaniel, 154 Okl. 168, 7 P.2d 419, but such right, express or implied, does not under the ordinary oil and gas lease serve to extend the lease during the period of such drilling and completion. Skelly Oil Co. v. Wickham, supra. The leases before this Court, because of their unusual habendum clauses, are extended by either production in paying quantities or diligent and continuous operations by the lessee, provided the express drilling obligation to commence a well on or before July 1, 1955, was satisfied by the lessee.

The distinction between the two types of leases involved in Prowant v. Sealy, supra, and the Skelly case was recognized by the Court in the latter case and in fact provided the basis for the decision there reached. Skelly Oil Co. v. Wickham, 10 Cir., 1953, 202 F.2d 442, 446.

Under the leases in dispute, defendant was required to commence operations on a well prior to July 2, 1955, and the term of leases could thereafter be extended by either securing production in paying quantities or by maintaining continuous operations on the leasehold. Whether these conditions were satisfied by the defendant presents questions of fact, for the evidence is in serious con-

flict as to the time defendant commenced operations and the diligence with which such operations were pursued before commercial production was obtained. Cf. Haddock v. McClendon, 223 Ark. 396, 266 S.W.2d 74; Morrison v. Swaim, Tex.Civ.App., 220 S.W.2d 493.

The Court finds that the pertinent facts disclosed by the evidence are as follows:

1. The land in question, known as the Thomas farm, had three oil wells drilled on it in 1936 and 1937. One of the wells was called the Summitt Number Two, located in the NW ¼, NE ¼, NW ¼, and another well, located in the NE ¼, NW ¼, NW ¼, was called the Pioneer Number One. Both wells produced from the Simpson or first Wilcox formations until late 1939, when they became depleted and were plugged and abandoned. There was no further oil play on the Thomas farm or surrounding area until defendant commenced blocking up the leasehold in question and others in that area because of his considered opinion that the prior drilling in the area had not reached the actual Wilcox horizon.

2. When the old wells were plugged and abandoned, the surface pipe, which ran to a depth of 200 feet, was left in the holes and the top of the pipe covered with earth. The casing in the holes was shot off at approximately 3,500 feet and pulled, leaving open holes between 200 feet and 3,500 feet, with casing from 3,500 feet to the depth of 5,100 feet remaining in the holes.

3. Defendant obtained the leases in dispute, and other leases covering the entire mineral interest in the Thomas farm on the dates reflected by such leases. Thereafter, defendant entered into a contract with Frankfort Drilling Company which, under defendant's interpretation of the agreement, required Frankfort to commence timely operations on the Thomas leasehold. The contract was not performed according to defendant's interpretation, and defendant was advised by Frankfort on June 28, 1955, two days before the disputed leases expired in the absence of operations or production, that no operations were contemplated by Frankfort.

4. On the evening of July 1, 1955, defendant drove to the Thomas farm and ascertained that Frankfort had not staked a location or moved equipment onto the leasehold. Defendant then advised the tenant on the Thomas farm that he intended to commence operations that night, and requested such tenant to call the lessor and determine who was to receive payment for any ground damages caused by the projected operations. Defendant thereafter employed four men to commence operations on the Thomas leasehold and an adjacent leasehold not involved in this dispute. A bulldozer operator was also employed by defendant on the night of July 1, 1955, to commence operations on the two leases immediately. The four men did arrive on the Thomas lease prior to 10 o'clock P.M. and there began efforts to locate the buried surface pipe of the Number Two Summitt well. The bulldozer operator arrived at the leasehold prior to midnight with his bulldozer and assisted in attemping to locate the buried surface pipe. All of these operations were undertaken in good faith by the defendant and commenced prior to July 2, 1955.

5. The bulldozer and employees of defendant remained on the Thomas lease on July 2nd and July 3rd, engaged in clearing the location, building entry roads and leveling the site for erection of a drilling rig. On the 3rd day of July, 1955, Joe Bradley commenced moving his drilling rig onto the Thomas leasehold and was rigged up for operations by July 7th. On this date Thomas visited the leasehold and expressed satisfaction with defendant's operations. On the following day, Thomas returned to the leasehold and delivered a letter to defendant advising him that he was operating on the leasehold without benefit of lease as to the Thomas interest for the reason that such lease had expired by its own terms. Defendant did not cease operations on the lease and from July 8th

until December 1, 1955, Bradley operated at the Number Two Summitt well in a diligent and prudent manner, maintaining continuous operations within the meaning of the habendum clauses of defendant's leases.

6. Defendant and Bradley spent a considerable sum of money on technical assistance and advice attempting to overcome the difficulty encountered in attempting to get their string of drilling tools into the abandoned casing where it had been shot off, but without results. During the period of Bradley's operations at the Summitt Number Two location, several shows of gas and oil were found at depths above 3,500 feet. These formations were not tested when encountered and have not been tested to date.

7. Bradley's rig remained operative and functioning at the location until December 2, 1955, when he was required to seek a release of his obligation to test the second Wilcox sand because of financial inability to proceed. On December 1, 1955 Bradley set and cemented 4 ½-inch extra hole drill pipe in the well to the depth of 3,501 feet. The ID of this pipe, at the tool joints, is 3¼ inches. There is no tool known to the oil industry with which the hole can be deepened, but the pipe can be perforated at the depths above 3,500 feet and the formations above that depth tested for oil and gas. The pipe has never been perforated, because of an opening in it, at some unascertained depth, which permits water to intrude. The hole has not been abandoned by the defendant but the evidence is insufficient to support a reasonable belief that this hole can be completed as a commercial producer of oil or gas sands above 3,500 feet.

8. Following the setting of pipe at the Summitt Number Two on December 1, 1955, the defendant ceased operations on the Thomas leasehold and did not again commence operations until about February 15, 1956. On that date, defendant moved a bailing unit to the Summitt Number Two location and thereafter from time to time until August 4, 1956, bailed down the well in an attempt to locate the depth as which the pipe was leaking. The bailing operations were not continuously carried on but were performed in good faith by the defendant.

9. On August 4, 1956, defendant again ceased operations at the Summitt location and moved to the location of the Pioneer Number One well. A rig was there erected and operations undertaken for cleaning out and deepening that hole. These operations were continuously maintained by defendant and carried the well to the second Wilcox horizon on about October 15, 1956. The well was completed as a commercial producer of oil on October 29, 1956, at an expense of approximately $51,000, which was a reasonable amount for such operation. This well is presently producing oil in commercial quantities under defendant's operations.

10. There is evidence that a new well can be drilled and completed in the area in question from surface to 5,200 feet in some sixty-five days. It is argued that proof of any time beyond sixty-five days from commencement to completion of a well is prima facie evidence of a want of diligent and prudent operation. However, the Court finds that the parties to the disputed leases contemplated that lessee would attempt to deepen and utilize the old abandoned wells on the Thomas farm, as was in fact done. In this connection the evidence is undisputed that the operations of defendant and Bradley from July 1, 1955, until December 2, 1955, were performed in a reasonable and diligent manner, consistent with the operations to be expected of a prudent operator acting under the same or similar circumstances with a rightful regard for the legitimate interests of his lessors.

From the facts established by the conflicting evidence, the Court concludes as follows:

1. The defendant commenced operations for the drilling of a well upon the Thomas leasehold on July 1, 1955, in

good faith and proceeded therewith in a prudent and diligent manner, sufficient under the terms of the disputed leases to extend them in force and effect, until his cessation of operations on December 2, 1955. Allen v. Palmer, 201 Okl. 673, 209 P.2d 502; Cromwell v. Lewis, 98 Okl. 53, 223 P. 671; Aldridge v. Gypsy Oil Co., 132 Okl. 13, 268 P. 1109; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647; Durbin v. Osborne, 292 Ky. 464, 166 S.W. 2d 841.

2. Continuous and diligent operations by the defendant after July 1, 1955, were a condition limiting the extension of the disputed leases. Such operations ceased on December 2, 1955, and while operations were again undertaken by defendant on February 15, 1956, they were commenced after the leases in issue had expired; and, in any event, defendant's operations from February 15, 1956, until August 6, 1956, were insufficient to constitute "operation or development" within the meaning of the habendum clauses of the disputed leases. Cosden v. Carter Wolf Drilling Co., 10 Cir., 1949, 183 F.2d 761; Gillespie v. Dougherty, 179 Okl. 330, 65 P.2d 486; Allen v. Palmer, 201 Okl. 673, 209 P.2d 502. Cf. Pardue v. Mark, Tex.Civ.App., 279 S.W. 2d 594.

3. No commercial quantities of oil or gas, or either of them, were discovered on the Thomas leasehold by defendant until October 15, 1956; and, commercial production was first obtained on the leasehold, by defendant, on October 29, 1956.

4. Upon the failure of the condition extending the defendant's four disputed leases, such leases expired in accordance with their terms. The date of expiration being December 2, 1955, when operations on the leasehold ceased. Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187; Williams v. Ware, 167 Okl. 626, 31 P.2d 567; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L.R.A.,N.S., 487; Summers, Oil and Gas (Perm.Ed.) Vol. 2, Sec. 305.

No forfeiture for breach of an implied covenant was involved in the termination of the four disputed leases, and there was no abandonment of the leases by defendant. Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679.

5. The subsequent operations undertaken by defendant, on the Thomas leasehold in August, 1956, at the location of the Pioneer Number One well, were commenced in good faith; but, they did not serve to revalidate the four expired leases here in dispute. The fact that such operations resulted in commercial production of oil does not alter this conclusion. Skelly Oil Co. v. Wickham, 10 Cir., 1953, 202 F.2d 442; Western States Oil & Land Co. v. Helms, 143 Okl. 206, 288 P. 964, 72 A.L.R. 357; Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783.

6. The conduct of the owner of the Thomas mineral rights in acquiescing in defendant's operations on July 7, 1955, and then repudiating the validity of the Thomas lease on July 8th, did not obstruct the defendant in the exercise of his rights under the Thomas lease, or the other disputed leases, and did not estop the lessors, whose mineral interests are in dispute, from asserting that their leases to defendant had terminated according to their terms and upon cessation of operation by defendant. While it has been held that an attack by the lessor upon his lessee's title will relieve the lessee of his duty to perform the implied covenants of his lease and afford him a reasonable time after the termination of the attack in which to again commence performance, Chapman v. Bowers, 180 Okl. 49, 67 P.2d 788; Simons v. McDaniel, 154 Okl. 168, 7 P.2d 419; Fisher v. Dixon, 188 Okl. 7, 105 P.2d 776; Twyford v. Whitchurch, 10 Cir., 1942, 132 F.2d 819; Shell Oil Co. v. Goodroe, Tex.Civ.App., 197 S.W.2d 395, such rule contemplates something more obstructive in the conduct of the lessor than mere notice by him to the lessee that, in the lessor's opinion, the lease has expired, Murphy v. Garfield Oil Co., 98 Okl. 273,

225 P. 676; Summers Oil and Gas (Perm. Ed.) Vol. 2, Sec. 451, and even the execution of a "top lease" by a lessor does not affect the lessee's rights, or duties, under his prior lease in the absence of an attack upon his title. Jennings v. Elliott, 186 Okl. 285, 97 P.2d 67; Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876. If, however, a right on the part of defendant to cease operations as to the Thomas interest existed by virtue of the lessor's conduct, the defendant did not elect to cease operations pending the withdrawal of the protest and, in fact, did not cease diligent operations on the leasehold until December 2, 1955, when it became apparent that the Summitt Number Two well could not be completed as a commercial producer of oil or gas and defendant lacked the financial ability to further pursue operation on the leasehold. Under these circumstances, it cannot be said that defendant's failure to continuously operate the leasehold resulted from unequitable conduct, of the Thomas lessor, which obstructed operations.

7. The Court is without jurisdiction to determine the status of the leases held by defendant from persons not parties to this action who have not executed leases to the plaintiff. The rights of the unjoined lessors and their lessee, the defendant, depend upon facts not before this Court. For purposes of this action it is sufficient to determine that the four leases held by plaintiff are valid and superior to the leases held by defendant upon the same undivided interests, having been executed and delivered after December 2, 1955, the date on which defendant's leases expired for want of continuous operations. Skelly Oil Co. v. Wickham, 10 Cir., 1953, 202 F.2d 442.

8. The operations by defendant at the Pioneer Number One well were undertaken in good faith on August 6, 1956, and carried out with diligence. In performance of these operations, defendant was a co-tenant with the plaintiff in the mineral estate comprising the Thomas leasehold, with a right as to this plaintiff to so operate upon the property and a duty to account to plaintiff, his co-tenant, for its proportionate share of the market value of oil and gas produced, less the reasonable costs of development, production and marketing. Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188; Moody v. Wagner, 167 Okl. 99, 23 P.2d 633. The plaintiff's undivided interest in the co-tenancy is eighty-five one-hundred-sixtieths or eighty-five undivided mineral acres in the subject quarter section containing 160 acres, more or less.

9. While the defendant is entitled to secure, from the part of the production allocable to plaintiff, the proportionate part of the reasonable costs of developing, producing and marketing the production from the Pioneer Number One well, the operations of defendant at the Summitt Number Two well site were performed by him as lessee of the entire leasehold, and such costs as were there expended or incurred must be borne by defendant alone.

It is necessary for the Court to consider plaintiff's asserted right to develop the second Wilcox sand horizon underlying the entire leasehold owned by it and defendant as tenants in common. As mentioned earlier, plaintiff claims this right by assignment to it of all rights obtaining to Hoyt B. Moore under Corporation Commission Order Number 32,739, dated June 19, 1956, entered in Corporation Commission Cause C.D. Number 8215.

The proceedings resulting in the order in question were commenced under the provisions of Section 87.1(d), Title 52, Oklahoma Statutes 1951, which permits an owner of undivided minerals in a drilling or spacing unit to secure pooling of his interest with those of all other owners, of undivided mineral interest in such unit, and appointment of one of such owners to develop the unit. Plaintiff's assignor filed his application for pooling and, as specifically required by the General Rules and Regulations of the Corporation Commission (Order Number

19334, dated October 24, 1946, Article I, General Rules, Rule 4) filed, what is denominated as, an affidavit listing the names of certain persons to receive notice of the pendency of the application.[1] The name of the defendant was omitted from such listing of interested parties and the "affidavit" was not executed by the applicant, as required by the pertinent rule of the commission, or acknowledged.

 The defendant, at the time the application and affidavit were filed, was record owner of oil and gas leases covering the entire mineral interest to be affected by the application. The applicant was charged with knowledge of such fact; and, in addition thereto, defendant was at such time upon the leasehold in question with equipment, operating for oil and gas purposes. The record also discloses that the applicant for the pooling order had himself executed one of the leases held by defendant. These facts, taken by themselves or in conjunction with any reasonable interpretation of the applicable statute and Commission Rules, conclusively establish the right of defendant to "notice" of the pendency of the application. This notice was not afforded him. The want of notice directly resulted from the default of the applicant in failing to comply with the rules of the Corporation Commission, which have the force and effect of rules of law; Renfrow v. Ittleson, 110 Okl. 109, 236 P. 585; cf. Bilokumsky v. Tod, 263 U.S. 149, 155, 44 S.Ct. 54, 68 L.Ed. 221; Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; Sheridan-Wyoming Coal Co. v. Krug, 84 U.S.App.D.C. 288, 172 F.2d 282; United States ex rel. Ohm v. Perkins, 2 Cir., 79 F.2d 533, for the Commission is a court of record when proceeding to determine matters with which it has been vested with jurisdiction by statute. Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062. The want of compliance with the "notice giving" rules of the Commission and the fact, which is not disputed, that the defendant did not obtain notice or knowledge of the pendency of the disputed hearing, require this Court to hold the order of the Commission void and without force or effect. The failure to file the required affidavit with the application (the instrument filed lacking both signature of the applicant and acknowledgment) appears on the face of the record of the proceedings. This defect was jurisdictional and rendered the order entered at the conclusion of such proceedings subject to collateral attack. Faulkner v. Kirkes, Okl.1954, 276 P.2d 264. And see McArthur, Problems Relating to Quiet Title Actions, 27 O.B. A.J. 385, 387–389 (1956).

 The other contentions of the defendant in respect to the validity of the disputed order need not be considered. However, the contention of the plaintiff, that the jurisdiction of the Commission in the disputed proceedings may be sustained under the provisions of Section 97, Title 52, Oklahoma Stat-

---

1. "Article I—General Rules" (Rules of Practice and Procedure Before the Corporation Commission Relating To Conservation of Oil and Gas) Order Number 19334, Dated October 24, 1946, provides:

"4. Attached to all applications for pooling orders shall be an affidavit signed by the applicant stating the names and last known addresses of all of the known lessees (as defined by subsection (d) of Section 4 of House Bill No. 257 of the 1945 Session of the Oklahoma Legislature, or any amendments thereto)* in the

* Carried forward as Section 87.1(d), Title 52, Okl.Stat.1951.
unit proposed to be pooled, and if the names of the lessees or addresses, or either of them, are unknown, said affidavit shall so state. When notice is issued by the Commission for the hearing upon said application, the Conservation Department of the Corporation Commission shall mail a copy of notice to all the persons named in said affidavits at the addresses shown."

utes (1951), is patently without merit. The precise statute under which the disputed order was entered provides for "notice". This statutory requirement has been augmented by duly established rules, which are a part of the regulations governing procedure and practice before the Commission, made expressly applicable to the type proceedings in which the disputed order was entered. The import of the rule requiring notice in pooling applications to be given in the specific manner, consistent with a prescribed procedure, is to satisfy the requirements of substantive due process of law. And, the rule must be followed to afford procedural due process of law. Cf. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 265–266, 74 S.Ct. 499, 98 L.Ed. 681. This case presents an excellent example of the reasons underlying the rule in question, for here the rule was not adhered to and the one person most interested in the proceeding was not apprised of its pendency. Such a want of notice to interested parties, whose vested property interests are to be affected, falls far short of the requirements of due process of law.

### Judgment

It is the order, decree and judgment of this court that the oil and gas leases, executed by the following persons and covering the specified undivided mineral interests in the Northwest Quarter of Section 2, Township 14 North, Range 2 East of the Indian Meridian, Lincoln County, Oklahoma, are owned by plaintiff as lessee or assignee; and, such oil and gas leases are superior and paramount to the prior leases of record owned by defendant covering the same undivided mineral interests:

(1) Lease to Hoyt B. Moore, as lessee from Bleeker L. Croom and Irene Croom, husband and wife, dated May 3, 1956, for term of two years, covering 5 acres, undivided, in the subject minerals.

(2) Lease to Moore Oil, Inc. from Hoyt B. Moore, dated June 18, 1956, for term of two years, covering 5 acres, undivided, in the subject minerals.

(3) Lease to Moore Oil, Inc. from Rex R. Moore, dated June 18, 1956, for term of two years, covering 10 acres, undivided, in the subject minerals.

(4) Lease to Moore Oil, Inc. from William H. Thomas and Willa Jean Thomas, husband and wife, dated June 14, 1956, for term of five years, covering 65 acres, undivided, in the subject minerals.

It is further ordered, adjudged and decreed that the following leases owned by the defendant have expired, are of no force or effect, and constitute clouds upon the title of plaintiff:

(1) Lease to W. F. Snakard from David Thomas, a widower, dated October 16, 1954, without specified term, covering 65 acres, undivided, in the subject minerals.

(2) Lease to W. F. Snakard from Bleeker Croom and Irene Croom, his wife, dated July 1, 1954, for term of one year, covering 5 acres, undivided, in the subject minerals.

(3) Lease to W. F. Snakard from Hoyt B. Moore and Ethel Moore, his wife, dated July 1, 1954, for term of one year, covering 5 acres, undivided, in the subject minerals.

(4) Lease to H. P. Holcomb from Rex R. Moore, dated October 16, 1954, without specified term, covering 10 acres, undivided, in the subject minerals.

The foregoing oil and gas leases should be, and hereby are ordered to be, released of record by the defendant, W. F. Snakard, within fifteen days from the date of this Judgment.

It is further ordered, adjudged and decreed that Order Number 32, 739 of the Corporation Commission of Oklahoma, entered in Cause C.D. Number 8215 on June 19, 1956, is void and of no force or effect as to the defendant, W. F. Snakard.

It is further ordered, adjudged and decreed that the costs of this action be taxed one-half to plaintiff, Moore Oil, Inc., and one-half to defendant, W. F. Snakard.