## SKELLY OIL CO. v. WICK-HAM et al.

### No. 4545.

United States Court of Appeals
Tenth Circuit.

Feb. 9, 1953.

Hawley C. Kerr, Tulsa, Okl. (James E. Hara and Gayle M. Pickens, Tulsa, Okl., on the brief), for appellant.

Fisher Ames, Oklahoma City, Okl. (Edward Bynum and Ames, Dauguerty, Bynum & Black, Oklahoma City, Okl., of counsel, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Midwest Oil Corporation,[1] Wickham, McAfee and Voorhees,[2] the owners of un-

---

1. Hereinafter called Midwest.

2. Hereinafter referred to collectively as the plaintiffs.

divided interests, aggregating ⅜ths, in the oil, gas and other minerals and mineral rights in and under 120 acres of land situated in Stephens County, Oklahoma, brought this action against Skelly Oil Company[3] seeking a decree adjudging that they were the owners of such undivided interests and that the oil and gas lease, hereinafter referred to, had terminated as to their interests, and quieting their title as against the claims of Skelly under such oil and gas lease.

On September 3, 1946, A. W. Pettigrew and Willie D. Pettigrew executed and delivered to L. A. Edwards an oil and gas lease covering such 120 acre tract of land. The lease was what is commonly known as an "unless" lease and the provisions thereof, pertinent to the questions here presented, read as follows:

"It is agreed that this lease shall remain in force for a term of Five years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

\* \* \* \* \* \*

"If no well be commenced on said land on or before the 3rd day of September, 1947, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Marlow, Okla., or its successors, \* \* \* the sum of One hundred twenty Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. \* \* \* In like manner and upon like payments or tenders the commencement of a well may be further deferred for periods of the same number of months successively. \* \* \*.

\* \* \* \* \* \*

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

On September 4, 1946, Edwards and Martha Edwards, his wife, duly executed and delivered to Skelly an assignment of such lease.

At the time of the execution of such lease, A. W. Pettigrew was the sole owner of the minerals and mineral rights in such land. Subsequent to September 3, 1951, and during the five year term of the lease,[4] the plaintiffs below acquired, through the execution and delivery to them of mineral deeds, undivided interests in and to the oil and gas and other minerals and mineral rights in and under said land as follows: Wickham—⅒th; McAfee—¹⁄₂₄th; Voorhees—¹⁄₁₂th; and Midwest—¹⁄₁₂th. In November, 1951, Midwest acquired an undivided ¹⁄₁₅th interest.

Skelly is the owner of an undivided ⁹⁄₁₆ths interest in and to the oil, gas and other minerals and mineral rights in such land.

On June 30, 1951, Skelly commenced the drilling of a well on the land, known as Pettigrew Well No. 1. It continued the drilling of such well with due diligence until it was completed as a dry hole. The drilling reached a depth of 5,796 feet on September 18, 1951. Drilling was suspended at that depth and a Schlumberger electrical well log was made. After the log was completed, the drilling contractor maintained circulation of the drilling fluid in the well and awaited further orders. By comparing and correlating the information obtained through such an electrical log with samples taken from the well and with logs of other wells in the vicinity, a geologist is able to determine with reasonable certainty what formations have been encountered in the well, their relative location, depth and thickness, and what, if any, of such formations is likely to contain oil and gas or either of them. The drilling contractor maintained the hole in condition so that further drilling could be carried on until about 4:00 p. m., September 19, 1951, when Skelly, acting on the recommendation of its geologist, instructed the drilling contractor to abandon the well as a dry hole.

---

3. Hereinafter called Skelly.

4. Hereinafter called the primary term.

On September 17, 1951, Skelly instructed its District Superintendent to commence the drilling of Pettigrew Well No. 2 on another location on such land. Pursuant to instructions given September 18, 1951, a surveyor staked the location of Pettigrew Well No. 2 during the morning of September 19, 1951. At 1:00 p. m. on September 19, 1951, defendant commenced the construction of roads to be used in connection with the drilling of Pettigrew Well No. 2, and commenced the clearing and leveling of the location. On September 20, 1951, gas and water lines were being laid to the new location. On September 21, 1951, the drilling contractor commenced the work of rigging up tools at, and the moving of equipment to the new location. This work continued on September 22, 1951, and on September 23, 1951, the drilling contractor spudded in Pettigrew Well No. 2. Thereafter the drilling of Pettigrew Well No. 2 was continued with due diligence until November 1, 1951, when it was completed to a depth of 3,877 feet. It was plugged back to a depth of from 2,220 to 2,260 feet, where oil was encountered in paying quantities. Since November 1, 1951, Pettigrew Well No. 2 has been producing oil in paying quantities.

Upon learning that Pettigrew Well No. 1 had been completed as a dry hole and on October 25, 1951, Wickham, McAfee and Voorhees notified Skelly in writing that they considered the lease as having expired upon the completion of Pettigrew Well No. 1 as a dry hole. Midwest gave written notice to the same effect to Skelly on November 15, 1951.

The trial court held, with respect to the undivided interests of the plaintiffs, that when Pettigrew Well No. 1 was completed as a dry hole, all of Skelly's rights under the oil and gas lease terminated, and that Pettigrew Well No. 2 was drilled by Skelly as a co-tenant and not under any valid, existing oil and gas lease. Judgment was entered accordingly and Skelly has appealed.

We shall assume, without deciding, that Pettigrew Well No. 2 was commenced before the completion of Pettigrew Well No. 1.

Skelly contends that the drilling of Pettigrew Well No. 1, commenced during the primary term of the lease, extended the lease until Pettigrew Well No. 1 was completed; that the drilling of Pettigrew Well No. 2 was commenced within an extension of the primary term of the lease; and that when Pettigrew Well No. 2 was drilled with diligence and completed as a commercial producer, the lease was continued in force and will remain in force so long as oil and gas are produced therefrom in paying quantities.

Simons v. McDaniel, 154 Okl. 168, 7 P. 2d 419, involved an "unless" oil and gas lease. It contained no express provision, as does the lease involved in the instant case, with respect to the effect of a well commenced during the primary term and completed after the expiration of the primary term. In the opinion in that case the court said, 7 P.2d at page 420:

"The drilling clause of lessee plaintiffs' lease conferred upon them the right to commence a well (by complying with the conditions of the instrument, i. e., exercising the option of paying rentals and thus continuing the lease in force) on the very last day of the term specified in the duration clause. Since lessee had such an agreed right, can we with reason say the parties to the lease contract contemplated that right a barren or worthless privilege? To do so is to convict the parties of an absurdity. To the contrary, 'in every private grant there passes by implication that which is reasonably necessary to the enjoyment of the thing granted.' * * *

"Therefore we hold that the grant to lessee plaintiff of the right to commence a well at any time within the term fixed by the lease contract, by necessary legal implication, carried with it the right to complete the well after the period fixed for commencement had expired, subject, however, to abandonment of that right by failure to proceed in good faith and with diligence."

After referring to early decisions the court further said:

"These cases are kindred to our present holding that, regardless of non-production during the duration clause of a lease, but where a well has been commenced under a drilling clause, the lease by its terms is continued in force pending completion in good faith of the well, and thereafter so long as oil or gas is produced in paying quantities."[5]

It will be observed that the court, in Simons v. McDaniel, supra, did not reach the precise question here presented, and, moreover, was dealing with implied provisions of a lease, whereas here we are dealing with an express provision.

In Bain v. Portable Drilling Corporation, 200 Okl. 569, 198 P.2d 207, the court construed a provision in an oil and gas lease, respecting the completion, after the expiration of the primary term, of a well commenced during such term, substantially identical with the provision in the lease in the instant case. In the opinion the court said, 198 P.2d at page 209:

"* * * The above quoted provision gave to the lessee the right to complete a well commenced within time whether such well was commenced within the primary term of the lease, as here, or whether it had been commenced within an extension of that term had the lease provided for the payment of rentals. It was a saving clause whereby the lessee, who had attempted to develop the lease and produce oil and gas therefrom in accordance with the provisions thereof, was protected in such effort so long as he continued with diligence his endeavor to complete a well commenced in good faith prior to the expiration of the lease."

But there, again, the precise question here presented was neither considered nor decided.

■ Our problem is to arrive at the mutual intent of the parties to this lease, as manifested by the language of the instrument.[6]

■ In Oklahoma an "unless" lease is construed most strongly against the lessee and in favor of the lessor.[7]

Undoubtedly, Skelly had the right, provided it proceeded with reasonable diligence and dispatch, to complete, after the expiration of the primary term, Pettigrew Well No. 1, the drilling of which it had commenced during the primary term. The right to so complete was expressly granted by the contract. Furthermore, if Pettigrew Well No. 1 had been completed as a commercial producer, clearly the lease would have been continued in effect so long as oil was produced therefrom.

But the well was completed as a dry hole and the continuance of the lease was conditional on its completion as a commercial producer. That condition cannot be disregarded in arriving at the intention of the parties. The right to complete, after the primary term, a well commenced during such term is one thing, and the effect of completion of the well is another. It was only in the event of completion of the well as a commercial producer that the lease was to be continued in effect as if such well had been completed within the primary term. In the event the well was completed as a commercial producer, that fact was to relate back and continue the lease in effect so long as oil should be produced from the lease.

■ An extension of the lease until the completion of Pettigrew Well No. 1 was not necessary in order to give Skelly the right to complete that well. The right to com-

---

5. See also Champlin Refining Co. v. Magnolia Petroleum Co., 178 Okl. 203, 62 P.2d 249, 250; Hicks v. Mid-Kansas Oil & Gas Co., 182 Okl. 61, 76 P.2d 269, 271, 272; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647, 648.

6. Imes v. Globe Oil & Refining Co., 184 Okl. 79, 84 P.2d 1106, 1108.

7. Lewis v. Grininger, 198 Okl. 419, 179 P. 2d 463, 464; Phillips Petroleum Company v. Curtis, 10 Cir., 182 F.2d 122, 125.

plete was expressly given. Neither is there anything inconsistent in regarding the lease as terminated at the expiration of the primary term, unless a future event should occur, and if such event should occur, giving it relation back to a time before the expiration of the primary term. The coming into being of the rights of a party under a contract can be made to depend on the happening of a future event or condition.

■ With respect to the undivided interests of the plaintiffs, we are of the opinion that the only unconditional right Skelly had under the lease, after the expiration of the primary term, was to complete the well it had commenced before such expiration; that any further rights Skelly might acquire under the lease were contingent and conditional, in that they were dependent upon the completion of the well as a commercial producer; and that when the well was completed as a dry hole Skelly's rights under the lease wholly terminated. That gives effect to what we think was the manifest intent of the parties to the lease. To hold otherwise would give to a simple conditional well completion clause the meaning and effect of a continuous drilling or development clause sometimes employed in oil and gas leases in Oklahoma. See Prowant v. Sealy, 77 Okl. 244, 187 P. 235.

Skelly asserts here for the first time that the owners of the other undivided interests in the oil, gas and other minerals and mineral rights in and under the land, aggregating 7/16ths, were indispensable parties and because of their absence as parties the court lacked jurisdiction.

The judgment adjudicated that the oil and gas lease had terminated only with respect to the separate and distinct interests of the plaintiffs. It in no wise undertook to adjudicate the rights of Skelly under its oil and gas lease with respect to the other owners of undivided interests. The rights of such other owners were wholly unaffected by the judgment.

■ In Oklahoma, owners of undivided interests in oil, gas and other minerals in land are tenants in common. Each tenant has a separate and distinct freehold.[8] In Moppin v. Norton, 40 Okl. 284, 137 P. 1182, the court held that one tenant in common may maintain an action to establish his undivided interest in real estate, as against a third person, without joining his co-tenants.[9]

■ An indispensable party is one who has such an interest in the subject matter of the controversy that a final decree cannot be rendered as between other claimants, of interests in the subject matter, who are parties to the action, without radically and injuriously affecting his interest and without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.[10]

■ Here, the judgment of the court in no wise adjudicates the rights of Skelly under the lease, with respect to the interests of the owners of the interests in the mineral rights, who are not parties to the action. The rights of such other owners are not injuriously affected by the judgment. Facts may have intervened as between such other owners and Skelly, which operated to extend and keep the lease in full force and effect as to them.

We conclude that the other owners were not indispensable parties to the action.

Affirmed.

8. Earp v. Mid-Continent Petroleum Corporation, 167 Okl. 86, 27 P.2d 855, 858, 91 A.L.R. 188; Prairie Oil & Gas Co. v. Allen, 8 Cir., 2 F.2d 566, 571, 40 A.L.R. 1389.

9. See also Hendrix v. Hendrix, 215 Ala. 646, 112 So. 219, 220; Chidester v. City of Newark, 3 Cir., 162 F.2d 598, 600;

Rose v. Saunders, 9 Cir., 69 F.2d 339, 340; Spring v. Ohio Oil Co., 5 Cir., 108 F.2d 560, 561.

10. Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, 458; Dunham v. Robertson, 10 Cir., 198 F.2d 316, 318, 319.