325 F.2d 377
 Carroll W. BRITTON, W. R. Britton, Rachel Jane Ballou and Fred Ballou, Appellants,
v.
Milton M. GREEN, Donald C. Bloink, Morgan Hockenberger, Margaretta C. Hockenberger, Ronald E. Mitchell and W. A. Thompson, Appellees.
 No. 7242.
 United States Court of Appeals Tenth Circuit.
 November 29, 1963.
 
 COPYRIGHT MATERIAL OMITTED Carloss Wadlington, Ada, Okl., for appellants.
 John H. Cantrell, of Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., (Lee B. Thompson, Oklahoma City, Okl., with him on brief), for appellees.
 Before MURRAH, Chief Judge, and PHILLIPS and SETH, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 This is an interlocutory appeal, pursuant to 28 U.S.C. § 1292(a) (2), from an Order of the District Court appointing a Receiver for oil properties in Lincoln County, Oklahoma. The diversity suit, brought by Michigan citizens against citizens of Oklahoma, asserted two claims. The first is to the effect that the plaintiffs are the separate, legal and equitable owners of undivided fractional interests in two oil and gas leases in Lincoln County (known as the Hopkins and Rives Leases), under written agreements with Carroll W. Britton, wherein she, as owner of the leases, agreed to deliver to the "Purchaser" a specified undivided fractional interest in the leases, less any overriding royalty interest of record, and wherein she agreed to drill and complete a well on each of the leases and operate the same "to the mutual interest of all parties hereto, as economically as good business judgment will warrant;" that Britton and her husband did drill, or cause to be drilled, a well on each of the leases; and, that as authorized agents of the plaintiffs and other owners of undivided working interests, they violated their fiducial obligations to the plaintiffs, by failing to properly complete the wells and by misoperating and mismanaging both leases, to the irreparable damage of the plaintiffs. The prayer was for a temporary restraining order, enjoining the Brittons from continuing the operation of the leases, from removing or disposing of any of the property on either of the leases or any of their interest therein, for an accounting, and for the appointment of an operating Receiver.
 
 
 2
 The second claim is asserted only by plaintiff Mitchell. It alleges the execution of a promissory note in the amount of $20,000 to Mitchell, by defendant Fred Ballou, for and on behalf of himself and as the authorized agent of the Brittons and Rachel Jane Ballou, and the execution of a mortgage by the said Ballou, on behalf of himself and as agent for the Brittons and Rachel Jane Ballou, to secure the promissory note, covering an undivided one-fourth interest in both the Hopkins and Rives Leases. The claim alleged default in payment of the note, and the failure of the mortgagors to efficiently operate the oil and gas leases, to keep and maintain the mortgaged property in good state of repair, and to cure title defects as required by the mortgage. The prayer was for judgment on the note plus interest and attorney fees, foreclosure of the mortgage, and appointment of a Receiver to operate the oil and gas leases pendente lite, as provided by the terms of the mortgage.
 
 
 3
 Pursuant to notice and hearing, the Court specifically found that it had jurisdiction of the parties and the subject matter; that the Brittons had violated the contract with plaintiffs and had mismanaged and misoperated the oil and gas leases, resulting in waste and drainage of gas from the Hopkins Lease by off-set wells; and, that they had failed to operate the well on the Rives Lease and had removed the tanks therefrom, without accounting to the plaintiffs therefor. The Court further found that the note was in default more than one year; that the mortgagors had violated the terms of the mortgage by failing to keep and maintain the leases in good repair and efficiently operate them in a workmanlike manner, thus impairing the mortgagee's security; and, that a Receiver should therefore be appointed for both oil and gas leases. A Receiver was appointed and ordered to take immediate possession of the leases and operate the same pursuant to Order of the Court.
 
 
 4
 Thereafter, the Brittons and the Ballous moved to dismiss the first claim, and to vacate the Order appointing the Receiver, alleging that when the suit was commenced, certain other named citizens of the State of Michigan were also owners of undivided fractional interests in both leasehold estates; that they are indispensable parties to the suit; and, that the Court was without authority to appoint a Receiver for their undivided interests in the properties in their absence. In their separate answer, the Brittons admitted the asserted respective interests of the plaintiffs in the oil and gas leases, subject to the right of Carroll W. Britton, under the agreements, to receive the proceeds of the oil and gas runs, and to be paid the expense of operating the oil and gas leases. The answer reiterated the indispensability of the non-party Michigan resident owners of undivided fractional interests in the same oil and gas leases, and alleged that their alignment as parties defendant in the suit would destroy requisite diversity of citizenship.
 
 
 5
 Answering the second claim, the Brittons admitted the execution of the note and mortgage, as attached to the complaint, but denied that either of the Brittons were personally liable on said note and stated in that connection that Carroll W. Britton was holding in trust an undivided one-fourth interest in the leasehold estate for the benefit of the mortgage, and that such one-fourth interest was subject to the mortgage.
 
 
 6
 The Ballous adopted the Brittons' answer to the first claim. They also adopted the Brittons' answer to the second claim, with respect to the note and mortgage, but specifically alleged that the provisions of the mortgage pertaining to appointment of the Receiver were inapplicable in this action, since the mortgage covered only a fractional undivided interest in the leasehold estate, the other interests being owned by persons not parties to the mortgage. Finally, Fred Ballou claimed credit for all payments on the note, and prayed that the mortgage be adjudged a lien only upon the interest held in trust by Carroll W. Britton, for the benefit of the mortgage.
 
 
 7
 The defendant Thompson answered, admitting the ownership of an undivided one-fourth interest in the Hopkins Lease, subject to an overriding interest of record. He admitted that the Hopkins Lease was being drained by wells on adjoining leases and that immediate action should be taken by the operator to sell the gas from the Lease. He had no objection to the Receivership, provided it was terminated early and its expense kept to a minimum.
 
 
 8
 On hearing for appointment of Receiver, the Court received in evidence the Journal Entry of a Judgment of the State District Court of Lincoln County, in a quiet title action by all of the parties to this suit and the other Michigan owners of undivided interests in the two oil and gas leases. The State Court Judgment purported to finally adjudicate the respective undivided interests of all the claimants in the Hopkins Lease, in the fractional proportions set out in the margin.[1] The State court proceedings did not involve the Rives Lease, but it seems to be agreed that all of the parties own approximately the same undivided fractional interest in that Lease. The State Court Judgment recited that the respective fractional interests of the Michigan residents, who are not parties to this suit, were held in trust by Carroll W. Britton. The undivided interests of all the parties are evidenced by the same form of agreement, under which Britton is designated as operator of the Leases, with the right to purchase the oil produced at the posted price, for the credit of the other interest holders, and with the duty to manage and operate the Leases for the mutual interest of all the leaseholders.[2] All of the fractional interest holders are thus co-tenants in the leasehold estates, subject to the separate but uniform operating agreements with Britton. See: Earp v. Mid-Continent Petroleum Corporation, 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188; Taylor v. Brindley, 10 Cir., 164 F.2d 235; Carter Oil Co. v. Crude Oil Co., 10 Cir., 201 F.2d 547; and Kuntz Law of Oil and Gas, Vol. 1, Ch. 5. It is on this operating agreement that the absent Michigan interest holders are said to be indispensable parties to a suit for appointment of a Receiver. The best of this argument is to the effect that by their agreements with Britton, they designated her as the operator of their leasehold estates, and the appointment of a Receiver, ousting her from operation of the leaseholds, is an unwarranted interference with their contract rights.
 
 
 9
 Before we reach the question of indispensability, we must heed the frequently stated admonition, "* * * that a federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant." Kelleam v. Maryland Casualty Co., 312 U.S. 377, 381, 61 S.Ct. 595, 85 L.Ed. 899. And see: Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763; and Inland Empire Insurance Co. v. Freed, 10 Cir., 239 F.2d 289. This is so, even though a State court, exercising concurrent jurisdiction, may have appropriately appointed a Receiver in the same circumstances. See: Pusey & Jones Co. v. Hanssen, ibid.; and Inland Empire Insurance Co. v. Freed, ibid. Cf. Cameron v. White, 128 Okl. 251, 262 P. 664. And see: Title 12 O.S. § 1551. The only purpose of the first claim is a conservatory Receivership, and it was improper, regardless of the indispensability of parties.
 
 
 10
 But, different considerations govern the propriety of the Receivership under the second claim by mortgagee Mitchell. He seeks judgment on the note and foreclosure of his mortgage, covering an undivided interest in both leasehold estates. By the terms of the mortgage, the mortgagor expressly agreed that in the event of a foreclosure suit, the mortgagee is entitled, "as a matter of right," to the appointment of a Receiver to take possession and control of, operate, maintain and preserve the mortgaged property or any part thereof, and the mortgagor waived all notice of the filing and hearing of such application for appointment of Receiver, and irrevocably consented to an appointment made pursuant thereto.
 
 
 11
 There is complete diversity of citizenship between the present parties. The requisite amount in controversy is also apparent. Mitchell is thus clearly entitled to his Receiver and the motion to vacate was properly denied, unless the absent Michigan residents were indispensable parties to the foreclosure proceedings, or more specifically, to the ancillary appointment of the Receiver.
 
 
 12
 It is, indeed, an historical rule frequently stated for practical application, that if a Court with jurisdiction of the parties and the subject matter, cannot fully adjudicate the issues between the parties without injury or injustice to an interested and absent party, the suit should fail for indispensability. See: Shields v. Barrow, 17 How. 129, 58 U.S. 129, 15 L.Ed. 158; Carter Oil Co. v. Crude Oil Co., supra; Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442; Homestake Mining v. Mid-Continent Exploration, 10 Cir., 282 F.2d 787, 797; Federal Practice And Procedure, Barron and Holtzoff, Ch. 8, §§ 512, 513; and Moore's Federal Practice, Vol. 3, § 19.07. The concept of indispensability is of ancient origin, probably born of dictum, but now matured into a generally accepted rule. It has been criticized as a "ghostly character which haunts the halls of justice, an apparition whose suggested existence stays the hands of the law." Professor Hazard on Indispensable Party — Historical Origin Of A Procedural Phantom, 61 Col.Law Rev. 1254. Professor Hazard suggests that "there is no party whose absence prevents a decree. There are parties whose absence prevents a complete decree" and, "therein" he says, "lies the fallacy of the indispensability rule." Ibid, p. 1282. In other words, a Court of equity should not refuse to act at all, simply because it cannot do complete justice in a given case. Another legal scholar would treat the rule as a "statement of policy, not unrelated to considerations of due process, in the light of which the court may seek to do maximum justice." See: Professor Reed, 55 Mich.Law Rev. 327, 336. We think of the rule as a creature of equity jurisprudence and as a reliable and practical guide for the appropriate exercise of federal equity jurisdiction, in accordance with the fundamentals of due process.
 
 
 13
 In determining whether, in this case, the Court may appropriately exercise its equity jurisdiction without injury or injustice to the absent co-tenants, we must look to the legal relationship of the parties and to the nature of the relief sought. The absent co-tenants have no litigable interest in the mortgaged estate. Their interest in the leaseholds will not be affected by a final decree of foreclosure, and they are not, therefore, necessary parties to the ultimate relief sought. See: Holt v. King, 10 Cir., 250 F.2d 671, and cases cited. But, they do have a litigable interest in the operation of the oil and gas leases. As we have seen, they have contracted with Britton to operate their interests in the leaseholds and to account to them for the net proceeds. A Receivership is an interference with that contract, and due process dictates that they be heard in the proceedings for the appointment of a Receiver.
 
 
 14
 If Britton can be said to be the express trustee under the operating contract, she is, of course, the real party in interest to any suit involving her trusteeship, i. e., see: F.R.Civ.P., Rule 17(a). The appellees do not claim an express trusteeship, but they do insist that the operating contract had the effect of creating a fiducial relationship between Britton and her co-tenants, with respect to the operation of the cotenancy, at least to the extent that she became the operating agent or trustee; that in such capacity she stood as the representative of the absent co-tenants in all matters respecting the operation of the property, including this suit for her removal; and, that notice to her in this suit was, therefore, constructive notice to the absent co-tenants. The appellants deny any trust relationship under the operating contract, or that Britton stood in a representative capacity with respect to this litigation. In that connection, they challenge the validity of that part of the State Court Judgment which recites that the fractional interests of the absent Michigan residents are held in trust by Britton, and offered the pleadings to show that the trust relationship was not an issue in that case. The trial Court took the State Court Judgment on its face, and we think very properly so, but that Judgment covered only the interests of the absent parties in one of the mortgaged leases. Quite apart, however, from the legal effect of the State Court Judgment, we think the operating contract had the effect of constituting Britton the operating agent or trustee for all the co-tenants, in all matters respecting the operation of both leases.
 
 
 15
 There is no trust relationship between co-tenants as such — one is not the agent of the other. See: Prairie Oil & Gas Co. v. Allen, 8 Cir., 2 F.2d 566, 40 A.L.R. 1389; Earp v. Mid-Continent Petroleum Corporation, supra, 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188; Taylor v. Brindley, supra; and Sharples Corporation v. Sinclair, Wyo., 167 P.2d 29. They undoubtedly may, by their separate agreements, employ an operator to possess and manage the cotenancy, without creating a trust relationship between themselves and the operating agent. See: White v. A. C. Houston Lumber Co., 179 Okl. 89, 64 P.2d 908 and cases cited; Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829; and Edwards v. Hardwick, Okl., 350 P.2d 495. Cf. Grannell v. Wakefield, 172 Kan. 685, 242 P.2d 1075. But when, as here, co-tenants undertake to designate a co-tenant as operating agent, to exploit the cotenancy for their mutual profit, they become co-adventurers in the enterprise, and stand in a fiducial relationship to each other and to the operating agent. See: Taylor v. Brindley, supra; Eagle-Picher v. Mid-Continent Lead & Zinc Co., 10 Cir., 209 F.2d 917; Blackstock Oil Co. v. Caston, 184 Okl. 489, 87 P.2d 1087; Vilbig Construction Co. v. Whitham, Okl., 152 P.2d 916; Bosworth v. Eason Oil Co., Okl., 213 P.2d 548. Cf. Brannan v. Sohio Petroleum Co., 10 Cir., 248 F.2d 316; Rees v. Briscoe, Okl., 315 P.2d 758; and Brannan v. Sohio Petroleum Co., 10 Cir., 260 F.2d 621. As operating agent, the co-tenant assumed to act for and on behalf of his co-tenants, and he is thus the trustee for his co-tenants and co-adventurers. See: Taylor v. Brindley, supra; Rees v. Briscoe, ibid.; Bosworth v. Eason Oil Co., ibid.; and Blackstock Oil Co. v. Caston, ibid.
 
 
 16
 Under the several contracts of the co-tenants, Britton was put in possession of the leaseholds, with the power and duty to operate them for the mutual profit of all co-tenants. She is the operating trustee and is before the Court to account for her trusteeship. In these circumstances, it is reasonable to impute notice of this proceedings to the absent co-tenants. Cf. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.
 
 
 17
 When we come to weighing the relative rights of the parties, i. e., the right of the mortgagee to his Receiver and the right of the absent co-tenants to the benefit of their operating contract, it is not inappropriate to consider that the mortgagee seeks to protect the co-tenancy against an unfaithful operating trustee. He seeks to conserve the property for the benefit of all, and the unfaithful trustee should not be allowed to plead the indispensability of absent parties in avoidance of the proceedings to bring her to account.
 
 
 18
 Viewed in this light, our situation is comparable to the capacity of less than all the beneficiaries of a trust to have a trustee removed, if he has so conducted himself that he ought to be removed, for "* * * [n]o beneficiary has a right to have the affairs of a trust conducted unlawfully, and no beneficiary can complain of the removal of a trustee if it is demonstrated that he has, because of misconduct, become an unfit person to occupy that position." Wesson v. Crain, 8 Cir., 165 F.2d 6, 9. The trial Court has found from the evidence that the trustee has breached her contract and her fiducial obligations, and that the property is in danger of dissipation. If the pendente lite Receivership is a detrimental interference with the contract rights of the absent parties, there is ample opportunity for intervention to assert those rights, or even a claim for tortious interference.
 
 
 19
 The judgment of the trial Court on the second claim is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The State Court Judgment pertinently provides: "It is, Therefore, Considered, Ordered, Adjudged And Decreed that the title and possession of said Plaintiffs in and to said Oil and Gas Lease be, and the same is hereby, forever settled and quieted in the Plaintiffs against the Defendants and as to each other in the following respective proportions:
 Milton M. Green and
 Donald C. Bloink: [plaintiff herein] Und. 7/64ths
 Morgan Hockenberger and
 Margaretta C. Hockenberger: [plaintiff herein]
 an undivided 1/32nd or " 2/64ths
 Ronald E. Mitchell: [plaintiff herein] " 1/64th
 Carroll W. Britton: [defendant herein] " 83/256ths
 Carroll W. Britton held in trust for Edward C. Lacy:
 [non-party Michigan resident herein] Und. 1/128th
 Carroll W. Britton held in trust for Pearl Keller:
 [non-party Michigan resident herein] " 1/16th
 Carroll W. Britton held in trust for Mrs. Rose Firsht:
 [non-party Michigan resident herein] " 19/256ths
 Rachel Jane Ballou: [defendant herein] " 1/8th
 W. A. Thompson: [defendant herein] " 1/4th"
 
 
 [2]
 The Agreement, by which all of the parties acquired their respective interests in the leasehold, pertinently recited:
 "It is further agreed that Seller shall have the right and option to purchase the oil produced from said premises and run to the credit of Purchaser. Seller will pay the posted field price in the area for such production * * *.
 "It is agreed that Seller shall have active charge of the operation of said leasehold estate, and that said premises shall be operated to the mutual interest of all parties hereto as economically as good business judgment will warrant. It is further agreed that the parties hereto will observe the spirit as well as the strict letter of this contract and work at all times to the mutual advantage of each other in the management and operation and development of said lease. * * *"
 
 
 
 20
 PHILLIPS, Circuit Judge (concurring).
 
 
 21
 This is an appeal pursuant to 28 U.S. C.A. § 1292(a) (2) from an order appointing a receiver for two producing oil and gas leases in Lincoln County, Oklahoma.[1]
 
 
 22
 Milton M. Green, Donald C. Bloink, Morgan Hockenberger, Margaretta C. Hockenberger and Ronald E. Mitchell, hereinafter sometimes called the plaintiffs, filed this action against Carroll W. Britton, W. R. Britton, Rachel Jane Ballou, Fred Ballou and W. A. Thompson, hereinafter sometimes called the defendants, alleging in their first claim for relief that they are the owners of the legal and equitable title to undivided interests in two oil and gas leases, known as the Rives Lease and the Hopkins Lease, respectively, and that the defendants hold the legal title to the remaining working interests in such leases; that they acquired their respective interests through separate written agreements with Carroll W. Britton, which in part provided that in consideration for the purchase price paid a test well would be drilled, completed into the tanks and equipped on a turnkey basis; that Carroll W. Britton was to have charge of the operations of the leases; that she was to conduct the operations on such leases for the mutual interest of all the parties; and that the plaintiffs were to have access to all books, records and information relating to such operations; that a gas well was drilled on one of the leases known as the Hopkins Lease and an oil well was drilled on the other lease known as the Rives Lease by the Brittons; that the Brittons breached the agreements with the plaintiffs and breached their fiduciary duty to the plaintiffs, in that they failed to complete the Hopkins well; mismanaged the Hopkins well so as to cause a waste of gas and the well to be shut in; neglected both wells; allowed offset wells to drain the Hopkins and Rives wells; failed to furnish basic data to the plaintiffs for a geological or engineering analysis of either the Hopkins or the Rives well, although requested to do so; failed to furnish the plaintiffs monthly statements of operating expenses or run statements; charged the plaintiffs incorrect and exhorbitant operating expenses; failed to meet title requirements of the gas purchaser, although such requirements were available; allowed tanks and equipment to be removed from the Rives Lease; and that as a result the plaintiffs have been irreparably damaged and have no adequate remedy at law.
 
 
 23
 The plaintiffs prayed for the appointment of a receiver, for a temporary restraining order enjoining the Brittons from continuing the operation of the leases, from removing or disposing of any of the property on either of the leases, and from parting with any of their interests in the leases, for an accounting, and for all other just and equitable relief.
 
 
 24
 In a second claim for relief, Ronald E. Mitchell alleged that Fred Ballou, for himself and as agent for the Brittons, and Rachel Jane Ballou executed and delivered to him a promissory note in the amount of $20,000, secured by a mortgage on an undivided one-fourth interest in both leases; default in the payment of the note and breach of conditions of the mortgage; that his security has been diminished; and that the mortgage provides for the appointment of a receiver in the event of a foreclosure. He prayed for judgment in the sum of $20,000, plus other amounts provided for in the mortgage, foreclosure of the mortgage, a declaration of priority of his lien and for the appointment of a receiver.
 
 
 25
 Prior to the hearing on the application for appointment of a receiver, the Brittons and the Ballous filed answers to the complaint, admitting that the plaintiffs were the owners of undivided shares in the working interests, as alleged in their complaint, but alleged that there are additional working interest owners, namely Edward C. Lacy, Pearl Keller and Rose Firsht; that such persons are indispensable parties to the action; that such persons are citizens of Michigan and if they are made parties to the action diversity of citizenship will not exist.
 
 
 26
 At the hearing on the application for the appointment of a receiver the parties stipulated that the purchasers paid the Brittons $17,000 for their interests in the two leases.
 
 
 27
 The plaintiffs introduced into evidence a certified copy of the journal entry of a judgment of the District Court of Lincoln County, Oklahoma, in an action to quiet the title to such leases, brought in such state court, setting forth the working interests in the Hopkins Lease. Such journal entry of judgment reads in part as follows:
 
 
 28
 "Carroll W. Britton, Rachel Jane Ballou, W. A. Thompson, Edward C. Lacy, Pearl Keller, Morgan Hockenberger, Margaretta C. Hockenberger, Ronald E. Mitchell, Mrs. Rose Firsht, Milton M. Green, and Donald C. Bloink, Plaintiffs, vs. George Morhain and L. P. Orr, Sheriff of Lincoln County, Oklahoma, Defendants. No. 17,643.
 
 Journal Entry of Judgment
 
 29
 * * * * * *
 
 
 30
 "It Is, Therefore, Considered, Ordered, Adjudged and Decreed that the title and possession of said plaintiffs in and to said Oil and Gas Lease, be, and the same is hereby, forever settled and quieted in the Plaintiffs against the Defendants and as to each other in the following respective proportions:
 
 
 31
 Milton M. Green and
 Donald C. Bloink: Und. 7/64ths

 Morgan Hockenberger
 and Margaretta C.
 Hockenberger:
 An Undivided 1/32nd or " 2/64ths

 Ronald E. Mitchell: " 1/64th

 Carroll W. Britton: " 83/256ths

 Carroll W. Britton
 held in trust for
 Edward C. Lacy: " 1/128th

 Carroll W. Britton held
 in trust for Pearl Keller: " 1/16th

 Carroll W. Britton held
 in trust for Mrs. Rose
 Firsht: " 19/256ths

 Rachel Jane Ballou: " 1/8th

 W. A. Thompson: " 1/4th"
 
 
 32
 In order for the plaintiffs in the quiet title action to be entitled to a judgment quieting the title to the leasehold estates in them, it was necessary for them to make affirmative proof of their titles thereto, and we must presume that was done, as their respective titles are set forth in the judgment.
 
 
 33
 The plaintiffs presented evidence from which the court could have found that the Brittons seriously mismanaged and misoperated the two leases, failed to furnish basic data to the plaintiffs for a geological or engineering analysis of the two wells, and failed to furnish them with books, records and information pertaining to the operation of the two leases, and that the Brittons and Ballous had defaulted on the note due to Mitchell and had otherwise breached the conditions of the mortgage securing such note.
 
 
 34
 W. R. Britton, testifying for the defendants, identified an agreement between Carroll W. Britton and Pearl Keller dated March 31, 1961, and filed with the County Clerk of Lincoln County, Oklahoma, August 30, 1962. Such agreement provides in part that Carroll W. Britton agrees to deliver to Pearl Keller an undivided 1/16 of 7/8 working interest in the Hopkins and Rives Leases; that Carroll W. Britton agrees to begin drilling of a well to a specified depth without delay; that Keller shall have an undivided 1/16 interest in the casing, equipment and material used in such well; that Keller has an option to participate in subsequent wells; that Keller shall have access for inspection purposes to the leasehold area, and access to any and all information, books and records relating to the operation of the lease; and that Carroll W. Britton shall have charge of the operation of the lease for the mutual interest of all parties. Such agreement was admitted in evidence over objections by the plaintiffs.
 
 
 35
 W. R. Britton further testified that the Keller agreement is similar to the agreements executed between Carroll W. Britton and the plaintiffs.
 
 
 36
 At the close of the hearing the court granted the application for the appointment of a receiver. The order appointing such receiver provides in part as follows:
 
 
 37
 "* * * the Court, * * * finds that it has jurisdiction of the parties and of the subject matter; that the Defendants, Carroll W. Britton and W. R. Britton, violated the contract with the Plaintiffs and mis-managed and mis-operated the Oil and Gas Mining Leases involved herein * * * and the Defendants, Carroll W. Britton, W. R. Britton, Rachel Jane Ballou and Fred Ballou have defaulted in the Note and Mortgage due the Plaintiff, Ronald E. Mitchell, for more than one year, and in otherwise violating the terms of the Mortgage to Ronald E. Mitchell * * * and by reason of all of said facts, the Court finds that a Receiver should be appointed for the Oil and Gas Mining Leases involved in this litigation."
 
 
 38
 The leaseholds are situated within the territorial jurisdiction of the United States District Court for the Western District of Oklahoma.
 
 
 39
 I do not construe the relief sought on the first claim to be limited to the appointment of a receiver. Under the allegations of the complaint, fairly construed, the relief which the plaintiffs in effect sought and the relief to which they were entitled was the immediate removal of Carroll W. Britton as operator of the leases, an accounting from her, and a temporary receiver to manage and operate the working interest in the leases until the owners could work out a new arrangement for operating such working interest. True, the prayer literally construed does not go that far, but the demand or prayer for relief is no part of the claim and a plaintiff may recover all the relief to which the allegations of his claim and his proof show him to be entitled.[2]
 
 
 40
 In Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442, 446, this court defined an indispensable party as follows:
 
 
 41
 "An indispensable party is one who has such an interest in the subject matter of the controversy that a final decree cannot be rendered as between other claimants, of interests in the subject matter, who are parties in the action, without radically and injuriously affecting his interest and without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience."
 
 
 42
 See also, Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, 458, 459; Carter Oil Co. v. Crude Oil Co., 10 Cir., 201 F.2d 547, 549.
 
 
 43
 In the latter case this court quoted from Oxley v. Sweetland, 4 Cir., 94 F.2d 33, 37, as follows:
 
 
 44
 "The thing that makes one an indispensable party to a suit is that some interest of his will be affected by it, not that questions of law or fact will be passed upon in which he is interested but by the decision of which he will not be bound."
 
 
 45
 Owners of undivided interests in the working interest in oil, gas and other minerals in land situated in Oklahoma are tenants in common.[3]
 
 
 46
 Under the law of Oklahoma, where one or more of the owners of undivided interests in an oil and gas lease enter into an agreement with another owner of an undivided interest in such lease, under which the latter is to drill a test well on the lease and thereafter operate and manage the lease, the relationship between the parties is that of joint adventurers, and an undivided owner who is to manage and operate the lease stands in a fiduciary relationship to his coadventurers and is bound to exercise the "utmost good faith" in managing and operating such lease and reporting and accounting to his co-owners with respect to such management and operation. Bosworth v. Eason Oil Co., Okl., 213 P.2d 548; Blackstock Oil Co. v. Caston, 184 Okl. 489, 87 P.2d 1087, 1089. In the latter case the court said:
 
 
 47
 "`The relation between the parties to a joint adventure is fiduciary in its character, and requires the utmost good faith in all the dealings of the parties with each other.' Cassidy v. Gould, 86 Okl. 217, 208 P. 780."
 
 
 48
 It follows that the relationship between the plaintiffs and Carroll W. Britton was that of coadventurers; that Carroll W. Britton occupied a fiduciary relationship to the plaintiffs and was under the duty of exercising the utmost good faith in the operation and management of the lease and in accounting for the moneys and properties received from such operation.
 
 
 49
 It seems to me that the question of whether there was an absence of an indispensable party, without whose presence the court would not have jurisdiction to proceed, is substantive, rather than procedural. The rule is for the protection of substantive rights of the absent parties. Hence, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, Oklahoma law governs.
 
 
 50
 In Cameron v. White, 128 Okl. 251, 262 P. 664, the facts were these: The First National Bank of Henryetta, Oklahoma, failed on July 20, 1923, and a receiver was appointed by the comptroller of currency to take charge of the bank. Four trustees were elected by the depositors of the failed bank to represent the depositors in effecting a plan of reorganization. Seven hundred seventy-one depositors assigned their receiver's certificates to such trustees and executed powers of attorney authorizing the trustees to represent them in the incorporation of a new bank. Pursuant to a reorganization plan, a new bank was incorporated and White, the plaintiff in the action and a depositor of the old bank who participated in the reorganization, subscribed for the purchase of stock in the new bank. After the organization of the new bank, it purchased from the receiver of the old bank its bank building and fixtures and the trustees purchased from the receiver of the old bank the remaining assets of such bank with a receiver's dividend and a loan from the new bank. Before delivering his check for stock, White obtained from the trustees a writing signed by them which provided:
 
 
 51
 "`After the payment of all collection charges and expenses incidental in connection with the reducing of the assets to money, to pay the balance of the proceeds received from the sale or collection of said assets to the stockholders of the'" new bank "`in proportion to the amount of stock owned by each person holding stock.'"
 
 
 52
 White brought the action against the trustees, praying for the establishment of a 1/10th interest in the trust estate on behalf of himself and for the appointment of a receiver, alleging mismanagement and breach of trust on the part of the trustees with respect to the assets of the old bank acquired by them. A receiver was appointed for the trust estate.
 
 
 53
 The trustees moved to discharge the receiver and sought dismissal on the ground of the absence of indispensable parties, namely, the other beneficiaries. The court quoted from Compiled Oklahoma Statutes 1921, § 518, in part as follows:
 
 
 54
 "A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either * * *:
 
 
 55
 "First. In an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * *"[4]
 
 
 56
 The court held that the other beneficiaries were not indispensable parties and affirmed the judgment of the trial court, refusing to vacate the order appointing a receiver. The court quoted with approval from Pickering v. De Rochemont, 45 N.H. 67, as follows:
 
 
 57
 "When the share of one of several cestui que trusts in a trust fund is ascertained and known, as where it is a moiety, or other aliquot part of the fund, a suit for a breach of trust may be maintained against the trustee, by the person entitled to that share, without joining the other cestui que trusts as parties."
 
 
 58
 In Moody v. Branson, Okl., 136 P.2d 925, the facts were these:
 
 
 59
 William H. Ryan died testate in Garfield County, Oklahoma, in 1931. His will provided for the creation of a trust, named his sister, Martha Ryan Moody, to be trustee thereunder, named his daughter, Leone Maurine Ryan, as direct beneficiary of the trust, and provided that if Leone died before becoming 30 years of age, the undistributed balance of the trust estate should be divided between Martha and another sister, Parmelia Raymond. The will was admitted to probate and the trust duly set up. In 1937, Leone brought an action against Martha, as such trustee, in a state court in Kansas, the place of residence of Martha, to require an accounting by her as trustee and for removal if she was found to have mismanaged the trust estate. Parmelia, who was a resident of Illinois, was not made a party. The Kansas court found Martha guilty of mismanagement of the trust, removed her as trustee, and ordered her to deliver the assets of the trust, which included land situated in Oklahoma, to a newly appointed successor trustee, John Branson. The Kansas judgment was not appealed from. An action was then brought in an Oklahoma state court to determine whether the plaintiff therein should pay a mortgage indebtedness owed to the estate of Ryan to Martha, as trustee, or to Branson, as trustee. To that action Branson, Leone and Parmelia were made parties. Martha and Parmelia asserted in the Oklahoma state court action that in an action to remove a trustee and appoint a successor trustee, all the beneficiaries are indispensable parties; that Parmelia was a beneficiary under the trust, and that since she was not made a party, the Kansas judgment was invalid. The Oklahoma court rendered judgment denying the removal of Branson as successor trustee and ordered the mortgage indebtedness paid over to him. Referring to the Kansas court action, the Oklahoma court said:
 
 
 60
 "This was an action in personam against Martha Ryan Moody. She resided in Greenwood County, Kansas. The personal property of the Trust was located there. The district court of that county being one of general jurisdiction possessing general equity powers, had jurisdiction of the action. Manley v. Carter, 7 Kan.App. 86, 52 P. 915; 65 C.J. 597, 629; Bogert, Trusts & Trustees, vol. 3, § 523, p. 1656.
 
 
 61
 "There were three issues involved in the proceedings in Kansas, an accounting, removal of the then trustee, and appointment of a successor trustee. It is well established that the rule that all beneficiaries are proper parties to an accounting is for the protection of the trustee alone, to guard him from a multiplicity of suits, and that the requirement may be waived by him. Wyman v. Herard, 9 Okl. 35, 59 P. 1009; 26 R.C.L. 1389. It is likewise well established that in an action to appoint a successor trustee the beneficiaries are proper, but not indispensable, parties and that a judgment appointing a successor trustee may not be collaterally attacked because of the absence of part of the beneficiaries. 65 C.J. 599, 601; 3 Bogert, Trusts and Trustees, § 533, pp. 1700, 1701; Sanders et al. v. Hall, 10 Cir., 74 F.2d 399. We think the rule that all the beneficiaries are proper parties to an action to remove a trustee is likewise for the protection of the trustee, to avoid a multiplicity of removal suits. He may also waive this requirement. A contingent beneficiary, whose rights have not vested, has no right to have any particular person remain as trustee. As long as there is a proper trustee he has no right to complain. Furthermore the interests of the class to which Mrs. Raymond belonged were fully protected at the Kansas hearing. Her interests in the accounting and removal of the trustee were identical with those of Mrs. McIver. Her interests, if any, in the retention of the trustee were identical with those of Mrs. Moody. She may have been a proper party, but she was not an indispensable party to either the accounting, the removal of the then trustee, or the appointment of a successor trustee and the judgment of the Kansas court may not be collaterally attacked on such grounds. See Freeman v. Prendergast, 94 Ga. 369, 21 S.E. 837. * * *"
 
 
 62
 Wesson v. Crain, 8 Cir., 165 F.2d 6, 9, was an action brought by Wesson against Crain, trustee of Lee Wilson & Co., a business trust, for the removal of the trustee. The action was challenged on the ground that the other beneficiaries were indispensable parties. After a review of the authorities, the court said:
 
 
 63
 "We agree with the Supreme Court of Massachusetts that one of several beneficiaries may have a trustee removed if he has so misconducted himself that he ought to be removed. We have no doubt that a trustee owes to each and to all of the beneficiaries of his trust the duty which the law imposes upon anyone who occupies such a position. See and compare Boyd v. Gill, C.C.S.D. N.Y., 19 F. 145, 146; Wall v. Thomas, C.C.S.D.N.Y., 41 F. 620, 621. If the plaintiffs, upon a trial, can prove that the defendant's conduct as trustee requires his removal, we think that the absence of the other beneficiaries as parties will be no insuperable obstacle to the entry of a decree removing him. No beneficiary has a right to have the affairs of a trust conducted unlawfully, and no beneficiary can complain of the removal of a trustee if it is demonstrated that he has, because of misconduct, become an unfit person to occupy that position."
 
 
 64
 Wesson v. Crain, Cameron v. White, and Moody v. Branson, supra, involved express trusts. But I think there is a close analogy between those cases and cases brought by one of several partners or one of several coadventurers against a managing and operating partner or coadventurer to remove him as operator and manager for breach of his fiduciary relationship, resulting from his mismanagement and misoperation. Moreover, as to the absent parties, Carroll W. Britton, by reason of her retention of the legal title to their undivided interests and the authority, unlimited as to time, to develop, manage and operate the working interests in the leases, although no formal words of trust were used, was the trustee of an express trust; and if such absent parties desired her retention as operator and manager, so that their position and interests in the proceeding are thus identical and mutual, they are and will be represented by her in the proceeding.
 
 
 65
 Since the mortgage only covered one-fourth of the undivided interests in the working interest in the leases, a receiver appointed in the proceeding on the foreclosure claim over the whole of the working interest would have to be on the grounds alleged in the first claim.
 
 
 66
 It is my conclusion that the facts alleged in the first claim and the second claim of the complaint and the evidence introduced in support thereof justified the removal of Carroll W. Britton as managing operator of the leases and the appointment of a receiver to succeed her in such management and operation and that the other co-owners not made parties to the action were not indispensable parties.
 
 
 67
 Accordingly, I concur in the affirmance of the order of the lower court appointing a receiver for the entire working interest in the leases.
 
 
 
 Notes:
 
 
 [1]
 Defendants below endeavored to appeal from an order overruling their motion to vacate the order appointing the receiver and from an order overruling their motion to dismiss portions of plaintiffs' complaint, but these are not appealable orders under 28 U.S.C.A. § 1292(a) and there has been no compliance with 28 U.S.C.A. § 1292(b) and will therefore not be noticed further
 
 
 [2]
 Hamill v. Maryland Cas. Co., 10 Cir., 209 F.2d 338, 340;
 United States v. Borin, 5 Cir., 209 F.2d 145, 147;
 United States v. Lesniewski, 2 Cir., 205 F.2d 802, 805;
 Fanchon & Marco, Inc. v. Paramount Pictures, 2 Cir., 202 F.2d 731, 734, 36 A.L.R.2d 1336;
 Fed.Rules of Civ.Proc., Rule 54(c), 28 U.S.C.A.
 
 
 [3]
 See Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442, 446
 
 
 [4]
 Section 1551 of 12 Okl.St.Anno., Perm. Ed., applicable in the instant case, in part here pertinent provides:
 "A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either, * * *:
 "First. In an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.
 "Second. In an action by a mortgagee for the foreclosure or his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, * * *."